IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ELIZABETH LINDSEY,

      Plaintiff,

v.                                            24-cv-00393-GBW-JFR

ALBUQUERQUE PUBLIC SCHOOLS
BOARD OF EDUCATION,
MELANIE BLEA, in her individual capacity,

Defendants

## SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE NEW MEXICO HUMAN RIGHTS ACT, AND THE FAMILY AND MEDICAL LEAVE ACT

Plaintiff, Elizabeth Lindsey, by and through her attorney Heather Burke, alleges and states:

## JURISDICTION AND VENUE

1. This action is brought by Plaintiff to remedy violations of the New Mexico Human Rights Act (HRA), the Families Medical Leave Act (FMLA), and the Americans with Disabilities Act (ADA). Plaintiff seeks damages and other appropriate legal relief

2. Plaintiff is a resident of Albuquerque, Bernalillo County, and New Mexico.

3. Defendant, Albuquerque Public Schools Board of Education ("APS") is a governmental entity doing business in New Mexico.

4. Defendant is an employer within the meaning of the HRA and FMLA.

5. Defendant Blea is employed by APS and is an employer under the FMLA.

6. Upon information and belief, Defendant employs more than 10,800 employees.

7. Venue is proper because all the unlawful practices complained herein occurred within the

1

County of Bernalillo.

8. The District Court has personal and subject matter jurisdiction.

9. Plaintiff filed EEOC/NMHRA, and DOL claims, exhausting her administrative remedies and has received a right to sue, dated May 9, 2023.

10. Plaintiff filed a second charge of disability discrimination, harassment and failure to accommodate with the NMHRB and the EEOC and received an order of non-determination on June 17, 2024 and July 8, 2024, respectively.

## **FACTUAL BASIS**

11. Plaintiff has worked for Defendant in multiple iterations and in various capacities since 2007. Plaintiff has been continuously employed as a Special Education Support Teacher for APS since August 2021.

12. August 2022: Administrator Melanie Blea became Plaintiff's supervisor.

13. On or about August 8, 2022, a meeting occurred between Human Resources (HR), Ms. Blea, and Plaintiff. The purpose of that meeting was to apprise Ms. Blea of Plaintiff's then existing ADA accommodations which included virtual meeting attendance and an accommodated office space.

14. November 7, 2022: Plaintiff, absent any due process, received notice of a disciplinary hearing with HR to be held November 14, 2022. The substance of the meeting was questioning Plaintiff about covering Service Hours.

15. On November 8, 2022, Plaintiff filed a complaint with APS Office of Equal Opportunity Services (EOS) because APS had not provided ADA accommodations to Plaintiff since

the August 8, 2022 meeting with Supervisor Blea.

16. On November 17, 2022, Plaintiff, having received no response to her EOS Complaint, contacted then APS Superintendent Scott Elder for assistance.

17. December 2, 2022: Plaintiff submitted intermittent FMLA papers for processing at APS HR.

18. On December 5, 2022, An ADA interactive process meeting was held during which Plaintiff's ADA accommodation plan was changed to clarify and document Plaintiff's accommodations from the meeting of August of 2022 which included virtual meeting attendance and an accommodated office space.

19. December 5, 2022: Supervisor Blea provided the office space accommodation at a location that was very distant from all but one of Plaintiff's work sites.

20. January 18, 2023: Plaintiff received an email from supervisor Blea stating that Plaintiff was required to make up IEP mandated special education service hours with students that had been missed due to the use of intermittent FMLA leave.

21. January 19, 2023: Plaintiff receives an email from Meg Christ, Extended Leave Specialist for HR at APS, stating that "APS [was] required to service the students."

22. January 23, 2023, Supervisor Blea denied Plaintiff's pre-approved accommodation allowing Plaintiff to attend department meetings virtually.

23. January 24, 2022: Plaintiff petitioned Superintendent Elger to intervene on the denial of accommodation that had occurred the prior day.

24. January 27, 2023: Plaintiff expressed concern because the IEP mandated service hours of those special needs students to whom her services were to be directed were not being met in Plaintiff's absence because supervisor Blea had failed to provide substitute coverage

3

during Plaintiff's approved FMLA leave. Failure to so cover violated Article 5, Section I (1) Conditions of Professional Service, In which Defendant is constrained to provide coverage under such circumstances.

25. February 3, 2023: Plaintiff met with supervisor Blea, and Jessica Rivera Senior Staffing Agent for HR at APS, to discuss several concerns including the lack of substitute coverage during Plaintiff's FMLA leave. Supervisor Blea again asserted that Plaintiff was required to make up service time with her students in the wake of missing those service hours during FMLA leave. Ms. Rivera stated that such service hours make up time should not infringe on Plaintiff's planning time. Supervisor Blea ordered Plaintiff to provide a report of weekly service hour shortages which Plaintiff did provide throughout her remaining time.

26. February 14, 2023: An ADA interactive process meeting was held during which Plaintiff's ADA Accommodation plan was again clarified to contain language to the effect that virtual meeting participation was to be allowed upon request of Plaintiff and not subject to the discretion of supervisor Blea.

27. February 13, 2023: Plaintiff received an email from supervisor Blea demanding that Plaintiff make up service hours to students that coming week.

28. February 21, 2023: supervisor Blea instructed Plaintiff to create and maintain a spreadsheet tracking FMLA leave, missed service time with students, and time made up and when such times were made up.

29. To supervisor Blea's request, Plaintiff responded that making up time was impossible as her schedule was already full, and that she could not possibly know what particular times were made up or predict an FMLA leave event, based in Plaintiff's assumption that

4

Supervisor Blea intended to fulfill Defendant's obligation to provide substitute coverage for those hours.

30. March 8, 2023: Supervisor Blea issued email refusing a reasonable caseload adjustment to prevent the presence of two Special Education Support Teachers in any classroom at the same time.

31. April 5-11: In the wake of a flurry of emails, supervisor Blea ordered Plaintiff to hand deliver a mileage form despite the fact that they had been emailed all that year. Supervisor Blea also demanded a "Red ink Signature," which was not required.

32. April 19, 2023: Plaintiff notified supervisor Blea that a new student had need for special education hours to be scheduled as the result of an Individual Educational Program (IEP) meeting. Supervisor Blea added the student to Plaintiff's caseload despite Plaintiff's protestations that she was soon to be starting an extended period of leave.

33. April 23, 2023: continuous FMLA was approved by HR at APS.

34. April 26, 2023: absent any communication regarding how APS would  see to Plaintiff's caseload in her absence, Plaintiff e-mailed a caseload summary to supervisor Blea and Anita Atler the Associate Superintendent for Special Education. Plaintiff s summary included a service hour shortage spreadsheet for all students for the entire Spring semester concluding that there would be a total shortage of 138.25 hours throughout the semester based on a lack of substitute coverage to date.

35. Due to the hostility and adverse actions against her, Plaintiff transferred to another position on August 16, 2023, at George I. Sanchez Collaborative Community School.

36. Due to Plaintiffs disabilities, finding a suitable office space has been difficult, and she has been located in at least 4 different office spaces in the last year.

37. Ms. Lindsey's current position does not require her to be in a classroom or to interact in person regularly with anyone. She has regularly performed her job duties remotely even while physically located on the school campus.

38. The local school administration for Plaintiff's new position has been supportive of accommodating her disabilities including allowing Plaintiff to telework as needed.

39. However, Defendants at the district level have refused to allow Plaintiff to be formally accommodated via telework and require that she continue to work from her school's campus.

40. This has subjected Plaintiff to pain, humiliation, distress and harassment, of which Defendants have actual knowledge.

41. On or around February 29, 2024, Ms. Lindsey was on a call with noise cancelling headphones to block ambient noise.

42. Suddenly, there was a tremendous amount of noise outside her office, sufficient that the other person on the call asked if Ms. Lindsey needed to go see what was going on.

43. Ms. Lindsey stepped outside to find that Juan Rodriguez, an assistant principal, was yelling loudly down the hall.

44. Ms. Lindsey informed Mr. Rodriguez that she could not hear the call she was on, and asked him to stop yelling.

45. Ms. Lindsey returned to her call, but Mr. Rodriguez began storming up and down the hall outside Ms. Lindsey's office, loudly ranting about how he should not have to "put up with her back here" and otherwise complaining about her disability infringing on his "right" to yell down the hall.

46. Ms. Lindsey filed a complaint about this incident of harassment on March 1, 2024.

47. The outcome of this report of harassment and discrimination is still unknown.

48. On March 4, 2024, Plaintiff's office moved again but the noise and disruptions at that location were significant.

49. On or around March 7, 2024, Plaintiff requested an ADA review of her accommodations, as they were not being adhered to, and she was being subjected to harassment and a hostile work environment.

50. She requested to be allowed to telework from home, where she could control her work environment and since she was already working remotely from an on-site office and Plaintiff's manager, the school principal, was supportive of this plan.

51.  Before scheduling an interactive process meeting, Defendants told undersigned counsel that she must fax them a letter of representation, despite being informed by both Ms. Lindsey and her counsel that she was representing her.

52. Defendants did not set the interactive process meeting until March 20, 2024.

53. At the meeting, Defendants pressed Plaintiff about her disability, and whether it could be "cured" going so far as to question her about whey she couldn't or wouldn't have more brain surgery for it.

54. At no point in the meeting did Defendants engage interactively with Plaintiff, or try to "brain storm" potential possible accommodations.

55. Defendants stated they would let Plaintiff know their decision in the next couple of weeks, but instead Defendants did not respond until April 26, 2024.

56. On April 26, 2024, Defendants unilaterally announced what accommodations they would offer Plaintiff, with no discussion or attempt to determine whether they would address the ongoing issues.

57. Defendants informed Plaintiff that she would be working off-site 3 days a week at Helen Fox, for work which "requires concentration" and two days a week she would have to report to the school campus.

58. Defendants did not explain or identify what work they believed Plaintiff did which did not require any concentration, and which she should be doing in the unaccommodated office at school.

59. The office at Helen Fox is only marginally better than at school, and Plaintiff is still subjected to noise and disruptions.

60. Although Plaintiff's accommodation had long been attending meetings remotely so that she could control the noise levels and use closed captioning to hear what was being said, Defendants' new decision stated a requirement for Plaintiff to attend meetings in person, but then also cryptically stated "with accommodations." It was not explained or described how these two opposite requirements should be interpreted.

61. On May 6, 2024, Plaintiff appealed this denial of proper and full accommodations to the APS Superintendent, as required by policy.

62. Defendants never responded to her appeal, and therefore it is deemed denied.

63. Defendants have never followed up to see if Plaintiff's accommodations are sufficient or to work with her to make sure that they are effectively assisting her in the performance of her job.

64. At the start of the new 24-25 school year, Defendants have communicated their intent to prohibit remote attendance at meetings for all employees.

65. After this broad prohibition, Defendants attempted to segregate Plaintiff, and other disabled employees from the general staff training, which would be impossible for her to

attend in person and instead require her to attend a later training in person but without the rest of the group.

66. This segregation would prevent Plaintiff from being seen as part of the group, from hearing and participating in what her peers had to say, and from otherwise having the same training and experience as her non-disabled peers.

67. Plaintiff informed Defendants that she had not requested, and did not wish to be segregated due to her disability, and Defendants eventually relented and allowed her to attend remotely as she had always done.

68. It remains unclear whether Plaintiff will continue to encounter this harassment and hostility regarding her remote attendance at other meetings going forward, despite this being a long-established practice to accommodate her disability.

## COUNT I.  DISABILITY DISCRIMINATION

69. Plaintiff repeats and realleges each and every allegation contained in all other paragraphs of this complaint with the same force and effect as if set forth herein.

70. Plaintiff is a Public Employee.

71. Plaintiff, a disabled person, has a physical or mental impairment that substantially limits one or more major life activity.

72. Plaintiff suffers from Superior Canal Dehiscence Syndrome is both a serious medical condition and a disability.

73. Plaintiff is otherwise qualified to complete all duties associated with her job despite her disability as evidenced by the number of years during which she successfully

9

accomplished those tasks prior to the events herein described.

74. Plaintiff communicated to Defendant her need and right to ADA accommodations to which the Defendant agreed on multiple occasions.

75. Defendant however intentionally discriminated against Plaintiff by denying ADA accommodations that were the byproduct of, and agreed upon during, interactive Process meetings between Defendant and Plaintiff. These included months of non-accommodated office space and disallowance of virtual attendance of meetings.

76. That Defendants have repeatedly denied Plaintiff accommodations and otherwise acted as gatekeepers to Plaintiff's accommodations creates a hostile work environment based on her disability.

77. On information and belief, Defendants allow some non-disabled employees, including educators, to work remotely from home.

78. Plaintiff has suffered, and continues to suffer, damages as a result of discrimination against her based in her disability.

## COUNT II. DISABILITY HARASSMENT

79. Plaintiff repeats and realleges each and every allegation contained in all other paragraphs of this complaint with the same force and effect as if set forth herein.

80. Defendant intentionally subjected Plaintiff to harassment and hostile work environment based in disability discrimination consisting of:

    (A)    pervasive refusal to accommodate Plaintiff in full knowledge of prior existing ADA accommodations arranged by and through Defendant on behalf of Plaintiff. These included refusal to allow meetings virtually and not providing

an accommodated office for four months.

(B)    Commanding Plaintiff to make up service hours for Plaintiff's special needs students in direct contradiction to FMLA rules and APS/ATF negotiated agreement.

(C)    Commanding Plaintiff to keep unnecessary, exacting and impossible records regarding the coverage of service hours for Plaintiff's special needs students.

(D)    Pervasive refusal to provide substitute coverage for Plaintiff's special needs students IEP mandated service hours during Plaintiff's FMLA leave

(E)    Adding a new student to Plaintiff's case load immediately upon being informed that Plaintiff was just about to begin a period of extended leave

81. Defendants grilled Plaintiff about why she couldn't have more brain surgery to seek to "cure" her disability which is highly improper, and not relevant to the discussion of the need for accommodations.

82. Defendants have impliedly threatened that Ms. Lindsey cannot continue to work as a head teacher if she is unable to perform the essential functions of her position due to lack of accommodation.  This seeks to chill Ms. Lindsey from enforcing her right to be fully accommodated by threatening retaliatory demotion.

83. Defendants force Plaintiff to work two days a week without any accommodation in an environment that they have actual notice causes her physical pain, emotional distress and in which she cannot fully perform the functions of her position.

84. Defendants have begun prohibiting remote meeting attendance for all employees, forcing Plaintiff to suffer the stress of not knowing whether she will be able to attend meetings and to have to repeatedly "request" the accommodation she has had because of her

already known need.

85. Plaintiff  suffered, and continues to suffer,  damages  as  a  result  of  intentional discriminatory   harassment  by Defendant that resulted in a hostile work environment.

## COUNT III. FAILURE TO ACCOMMODATE

86. Plaintiff repeats and realleges each and every allegation contained in all other paragraphs of this complaint with the same force and effect as if set forth herein.

87. Defendants have a duty to reasonably accommodate their disabled employees.

88. Defendant had direct knowledge of Plaintiff s disability having engaged in the ADA interactive process with Plaintiff on several occasions.

89. Plaintiff made requests for accommodations, accepted and agreed upon by Defendant, that specifically, she would be allowed to attend meetings virtually and be assigned an accommodated office.

90. Defendant however refused Plaintiff those accommodations upon reasonable request by Plaintiff.

91. Despite the agreement and support of Plaintiff's supervisor to allow Plaintiff to telework, and her statements that Plaintiff's performance of her job duties is not adversely affected by telework, Defendants at the district level have explicitly refused to allow Plaintiff to do so.

92. This requires local school administration to not accommodate their employees, even when they believe the accommodations are reasonable and necessary, and in the best interest of the school and students.

93. Plaintiff has continued to request proper accommodation, but Defendants have refused to work together with her to determine appropriate accommodations and instead has unilaterally decided partial measures, with no explanation or communication about whether they enable Plaintiff to perform the essential functions of her position.

94. Defendants located Plaintiff's work site, for only a part of the time, at another administrative building, where Plaintiff is still subjected to environmental noise outside of Plaintiff's control, and where she still works remotely.

95. Plaintiff appealed this as policy requires, and Defendants did not respond to her appeal.

96. Inappropriate, partial, or otherwise half-hearted accommodation attempts that do not actually assist Plaintiff in performing the essential functions of her position are still deemed a failure to accommodate.

97. Defendants' abject refusal to fully accommodate Plaintiff is unreasonable.

98. Defendants' abject refusal to allow Plaintiff to telework from home when she already works remotely, and which would cost them little to nothing, is unreasonable.

99. Properly accommodating Plaintiff's disability would not cause undue hardship on Defendants.

100.    As a result of Defendants violations, Plaintiff suffered, and continues to suffer, damages.


## COUNT IV. INTERFERENCE  WITH FMLA

(Defendants APS and Blea)

101.    Plaintiff repeats and realleges each and every allegation contained in all other paragraphs of this complaint with the same force and effect as if set forth herein.

13

102.     Defendant Blea was Plaintiff's direct supervisor, acts in the interest of APS, supervised and controlled her work schedules and conditions of employment, including decisions regarding leave and job assignments.

103.     Plaintiff processed a claim for and was authorized by Defendant granting Plaintiff both intermittent and continuous FMLA on separate occasions.

104.     Plaintiff gave appropriate notice for each FMLA leave event, which complied with APS policy.

105.     Defendants refused to provide substitute coverage for Plaintiff s IEP mandated service hours for special needs students during the times of her FMLA leave.

106.     Defendants required Plaintiff to make up service hours lost as a result of approved FMLA leave events as well as penalizing her by docking her sick time, in violation of the FMLA.

107.     Defendants continued to hold Plaintiff responsible for that coverage despite its knowledge that it was responsible for providing coverage, of service hours in Plaintiffs absence due to FMLA leave.

108.     Defendant's continued requirement that Plaintiff cover lost service hours constituted a threat that were Plaintiff not able to complete coverage of those hours, she would be subjected to progressive discipline and eventual loss of her job.

109.     Defendant's continued requirement that Plaintiff cover lost service hours constituted an intentional attempt to dissuade Plaintiff from rightfully utilizing FMLA hours due to her.

110.     Defendant's requirement that Plaintiff cover the service hours lost during her authorized use of FMLA prejudiced Plaintiff by forcing her to worry about the loss of

IEP mandated service hours for her special needs students, increasing her work load,

causing emotional distress, and forcing her to fear disciplinary action and for the security

of her continued employment.

111.     As a result of Defendants interference, Plaintiff suffered damages.

## **PRAYER FOR RELIEF**

112.     WHEREFORE, Plaintiff respectfully requests that this be tried by a jury of Six(6)

of her peers, and that this Court enter judgment:

(A)     Enjoining Defendants to reasonable accommodate Ms. Lindsey and to widely

offer tools and methodologies aimed at an inclusive workplace for disabled

employees.

(B)     Awarding Plaintiff compensatory damages that would make her whole for all

earnings she would have received but for Defendant's discriminatory, and

unlawful treatment, including, but not limited to, wages and other benefits;

(C)     Awarding Plaintiff, the costs for this action together with reasonable attorney's

fees as provided by the FMLA and the New Mexico Human Rights Act;

(D)     Awarding   Plaintiff   liquidated (double) Damages for Defendant's bad faith

interference with Plaintiff s rightful use of FMLA.

(E)     Awarding Plaintiff punitive damages against Defendant for Defendant's

violation of FMLA.

(F)     Awarding Plaintiff compensatory damages for her mental anguish and

humiliation

(G)     Granting such other and further relief as this Court deems necessary and

proper.


Respectfully Submitted.

Heather Burke
Attorney at Law
1000 Cordova Place #24
Santa Fe, NM 87505
(505) 428-9424
heather@hburkelaw.com