IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ELIZABETH LINDSEY,**

    **Plaintiff,**

    **vs.**                                                                               Civ. No. 24-393 GBW/JFR

**ALBUQUERQUE PUBLIC SCHOOLS**
**BOARD OF EDUCATION, and MELANIE**
**BLEA, in her individual capacity,**

    **Defendants.**

## ORDER DENYING MOTION TO COMPEL

**THIS MATTER** is before the Court on Plaintiff's First Motion to Compel Discovery ("Motion"), filed December 2, 2024. Doc. 47. On December 16, 2024, Defendants filed a Response. Doc. 52. On January 16, 2025, Plaintiff filed a Reply. Doc. 63. Having reviewed the briefing and the relevant law, and being fully advised in the premises, the Court finds the Motion is not well taken and is **DENIED**.

### I. PROCEDURAL BACKGROUND

On August 7, 2023, Plaintiff filed a Complaint for Employment Discrimination against Defendant Albuquerque Public Schools ("APS") in Second Judicial District Court, County of Bernalillo, State of New Mexico. Doc. 1-1 at 3-10. In her Complaint, Plaintiff brought claims for Disability Discrimination, Disability Harassment, Failure to Accommodate, and Interference with FMLA. *Id.* Plaintiff suffers from Superior Canal Dehiscence Syndrome which impacts her hearing, concentration, and vestibular function (balance). *Id.* at 7. Plaintiff alleges that Defendant discriminated against and harassed her by failing to provide her with reasonable ADA accommodations based on her disability. *Id.* at 4-9. Plaintiff also alleges that Defendant

interfered with her leave taken pursuant to the FMLA by refusing to provide substitute coverage and requiring Plaintiff to make up service hours upon return. *Id.* at 9-10.

On February 9, 2024, Plaintiff filed a First Amended Complaint for Violations of the New Mexico Human Rights Act, and The Family and Medical Leave Act. Doc. 1-1 at 20-29. Plaintiff added Melanie Blea as a Defendant. *Id.* Defendant APS was served on March 27, 2024. Doc. 1 at 3. Defendant Blea was served on April 4, 2024. *Id.* On April 25, 2024, Defendants timely removed this action based on federal question jurisdiction. Doc. 1. On September 5, 2024, Plaintiff filed a Second Amended Complaint for Violations of the New Mexico Human Rights Act, and the Family and Medical Leave Act ("Complaint") for the purpose of including allegations which have occurred since Plaintiff filed her lawsuit. Doc. 22.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 37(a) allows a party seeking discovery to "move for an order compelling ... discovery" after noticing other parties and all affected persons and making a good faith effort to confer with the party or person from which discovery is sought. Fed. R. Civ. P. 37(a)(1). Grounds to compel include failing to answer an interrogatory posed under Rule 33 or produce a document requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv). Responses that are evasive or incomplete constitute a failure to answer or respond. Fed. R. Civ. P. 37(a)(4). A response to an interrogatory is evasive or incomplete where it omits information obtainable by the responding party with reasonable effort. *See Milner v. Nat'l Sch. of Health Tech.*, 73 F.R.D. 628, 632 (E.D. Pa. 1977); *Miller v. Doctor's Gen. Hosp.*, 76 F.R.D. 136, 140 (W.D. Okla. 1977). A response to a request for production of documents is incomplete where it omits documents that the responding party has practical ability to obtain. *See Landry v. Swire Oilfield Servs., LLC*, 323 F.R.D. 360, 382 (D.N.M. 2018); *In re NTL, Inc. Secs. Litig.*, 244

2

F.R.D. 179, 195 (S.D.N.Y. 2007). "The party moving to compel discovery has the burden of proving the opposing party's answers [are] incomplete." *Duran v. Donaldson*, No. 1:09-cv-758 BB/DJS, 2011 WL 13152655, at *2 (D.N.M. June 2, 2011) (unpublished) (citing *Daiflon, Inc. v. Allied Chem. Corp.,* 534 F.2d 221, 227 (10th Cir. 1976)).

"[T]he Tenth Circuit 'reviews [a] district court's ruling [on a discovery motion] for abuse of discretion.'" *Vargas v. Norris*, No. 22-cv-0182 WJ/GJF, 2023 WL 1070471, at *2 (D.N.M. Jan. 27, 2023) (quoting *United States v. Muhtorov*, 20 F.4th 558, 629–30 (10th Cir. 2021)). "Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery and provides that '[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.'" *Romero v. Core Civic, Inc.*, No. 1:21-cv-0544 KG/KRS, 2022 WL 4482733, at *2 (D.N.M. Sept. 27, 2022) (quoting Fed. R. Civ. P. 26(b)(1)).

"Relevant evidence is that which 'has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action.'" *Id.* (quoting Fed. R. Evid. 401). Proportionality is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Under our rules, parties to civil litigation are given broad discovery privileges." *Regan -Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. 2008). "Nonetheless, the Court is not required to permit the parties to engage in fishing expeditions in the hope of supporting their claims or defenses." *Romero*, 2022 WL 4482733, at *2 (citing *Landry v. Swire Oilfield Servs.*, L.L.C., 323 F.R.D. 360, 375 (D.N.M. 2018)).

3

### III.   ARGUMENT AND ANALYSIS

A.   **Relevant Factual Background**

By way of background and relevant to the discovery Plaintiff seeks based on her alleged disability discrimination and failure to accommodate claims against Defendants, on August 6, 2022, Plaintiff attended a meeting with a representative from human resources and Defendant Blea to apprise Defendant Blea of Plaintiff's then existing ADA accommodation which included (1) virtual meeting attendance and (2) an accommodated office space. Doc. 22 at 2, ¶ 13. On December 5, 2022, Plaintiff's ADA plan was "changed to clarify and document Plaintiff's accommodations from the meeting of August of 2022 which included virtual meeting attendance and an accommodated office space." *Id.* at 3, ¶ 18. On the same date, Defendant Blea provided Plaintiff with an accommodated office space "at a location that was very distant from all but one of Plaintiff's work sites." *Id.* at ¶ 19. On January 23, 2023, Defendant Blea denied Plaintiff's pre-approved accommodation allowing Plaintiff to attend department meetings virtually. *Id.* at ¶ 22. On February 14, 2023, Plaintiff's ADA accommodation plan was clarified that Plaintiff was allowed virtual meeting participation upon request. *Id.* at 4, ¶ 26. On August 16, 2023, Plaintiff transferred to a position at George I. Sanchez Collaborative Community School where finding a suitable office proved difficult and required multiple moves. *Id.* at 5, ¶¶ 35, 36. Plaintiff alleges the administration at her new position is amenable to her working remotely from home, but that Defendants at the district level have refused a formal accommodation of telework. *Id.* at 6, ¶ 39. On March 7, 2024, Plaintiff requested a review of her ADA accommodation and requested she be allowed to work remotely from home. *Id.* at 7, ¶ 50. On April 26, 2024, Defendants presented Plaintiff with an ADA reasonable accommodation plan to include three days a week of off-site work at the "Helen Fox" educational complex for work which requires

4

concentration and two days a week of on-site work. *Id.* at 8, ¶ 57. The accommodation plan also provides that Plaintiff attend meetings in person but "with accommodations." *Id.* at ¶ 60. At some point thereafter Defendants returned to allowing Plaintiff to attend meetings virtually. *Id.* at ¶ 67.

Based on the foregoing alleged facts and relevant to the discovery at issue here, Plaintiff claims, *inter alia*, that Defendants discriminated against her by failing to accommodate her disability when they altered her previously existing ADA accommodation which resulted in months of non-accommodated office space and not allowing her to attend meetings virtually, refused to communicate and engage with her to determine an appropriate accommodation, and more recently refused Plaintiff's request to work remotely from home which Plaintiff deems is reasonable. Doc. 22 at 10-13. Plaintiff also claims that Defendants' failure to accommodate her disability has created a hostile work environment. *Id.* at 10.

### B. Informal Discovery Dispute Status Conference

Pursuant to the Court's Order Adopting Joint Status Report and Provisional Discovery Plan With Changes and Setting Case Management Deadlines (Doc. 15), the parties sought and the Court held an informal discovery dispute status conference on November 21, 2024, in hopes of resolving the disputed discovery issue raised in Plaintiff's Motion. Doc. 43. At the status conference, the Court advised Plaintiff that it was inclined to rule against Plaintiff's discovery requests on the issue of comparator evidence. Doc. 47 at 1. Plaintiff's motion, therefore, is "to fully inform the Court of the legal merit of Plaintiff's position on the issue of discoverability of comparator evidence in disability discrimination and/or failure to accommodate cases." *Id.*

### C.   Motion to Compel

#### 1.   Plaintiff's Motion

In her Motion, Plaintiff argues that discovery of comparator evidence must be allowed in discrimination cases.  Doc. 47 at 3.  Plaintiff argues that "[w]hile failure to accommodate is an act of discrimination itself, she seeks discovery of how other disabled employees are treated because that is relevant to the question of reasonableness, [and] also to the question of whether Defendants are uniformly applying policies, requirements and job descriptions, or whether Defendants have a practice of discrimination and/or failure to properly accommodate disabled employees."  *Id.* at 4-5.  Plaintiff argues that since her disability is rare, it is unlikely there are comparators with her exact disability and that comparator evidence discovery, therefore, should focus on similar accommodations.  *Id.* at 5.  Plaintiff thus seeks discovery on any APS employee, disabled or nondisabled, who has requested and been allowed to work remotely from home.  *Id.*  Plaintiff argues this information as to reasonableness is indisputably relevant to her failure to accommodate claims, that Defendants are the sole source of this information, and that there is no legal basis not to produce this information even if confidential.[1]  *Id.* at 6-7.

---

[1] Plaintiff cites a number of cases to support her arguments.  For instance, she cites *Davidson v. Am. Online, Inc.*, 337 F.3d 1179 (10th Cir. 2003), to support her argument that whether an accommodation exists that will enable a plaintiff to perform the essential function of her job is a mixed question of law and fact and that "[c]ritical to the analysis is the question of whether an employer's policies, job descriptions and essential functions are 'job-related, uniformly enforced, and consistent with business necessity.'"  *Id.* at 2-3.

Plaintiff cites *Univ. of Pa. v. EEOC*, 493 U.S. 182 (1990), for the premise that an alleged perpetrator of discrimination cannot be allowed to pick and choose the evidence which may be necessary for investigation and that there may be evidence of discriminatory intent in "confidential notes and memoranda which the [Defendant] seeks to protect."  *Id.* at 3.

Plaintiff cites *Albritton v. CVS Caremark Corp.*, 2016 U.S. Dist. LEXIS 83606 (W.D. Ky. June 28, 2016) (unpublished), for the premise that comparator evidence should be compelled despite a defendant's objections that parties are not similarly situated because the information sought could not be obtained from another source.  *Id.* at 3.

Last, Plaintiff cites *EEOC v. Tricore Reference Labs.*, 849 F.3d 929 (10th Cir. 2017), for the premise that when seeking comparator evidence, those selected as comparators need not be exactly the same as the plaintiff.  *Id.* at 4.  Plaintiff argues that in *Tricore,* the Tenth Circuit reversed the district court's refusal to enforce a subpoena requesting

The interrogatories and request for production Plaintiff propounded to Defendants at issue are:

*Interrogatory No. 11*: List each and every employee, including name, job title and date of request, from June 2021 to present who has sought remote work as an accommodation for their disability. For each, state whether the request was granted and the date it was granted;[2]

*Interrogatory No. 12*: List each and every employee, including name, job title and date of hire, from June 2021 to present who works remotely for all or any part of their workweek. For each, state how many hours they work remotely each week;[3] and

*Request for Production No. 8*: Produce all documents related to accommodation requests made by APS employees from January 2022 to present, including forms, emails, letters, memos, and any related communications.[4]

---

comparator evidence thereby demonstrating its position on allowing comparator evidence in disability discrimination and failure to accommodate cases. *Id.*

[2] Defendants answered as follows:

> This Interrogatory appears to be directed at Defendant APS only. Defendants object to this Interrogatory as overly broad, irrelevant, and on the ground that it seeks confidential, private, and protected medical and employment information of other APS employees, to which Plaintiff is not entitled.

Doc. 52-1 at 2.

[3] Defendants answered as follows:

> This Interrogatory appears to be directed at Defendant APS only. Defendants object to this Interrogatory as overly broad in time, and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, APS refers Plaintiff to the Employee Handbook, Work Schedule, Business Hours, which states that "Albuquerque Public Schools does not permit working from home (telecommuting) except in infrequent, singular circumstances. All instances of telecommuting must be authorized in advance by both the department director and appropriate Executive Director/Superintendent." Doc. 52-1 at 3.

Doc. 52 -1 at 3.

[4] Defendants responded as follows:

> This Request for Production appears to be directed at Defendant APS only. Defendants object to this request as overly broad, irrelevant, and on the ground that it seeks confidential, private, and protected medical and employment information of other APS employees to which Plaintiff is not entitled.

Doc. 52-1 at 4.

7

Doc. 47 at 5-6.  Plaintiff argues that Interrogatories No. 11 and 12 seek information on how often Defendants are granting telework as a reasonable accommodation for disabled and non-disabled employees.  *Id.*  As for Request for Production No. 8, Plaintiff concedes this could likely be narrowed but maintains that this evidence is probative of the process Defendant APS uses in applying its policies, of how comparators are treated, whether comparators are subjected to the same analysis as Plaintiff, whether comparators have the same or similar essential functions, and whether comparators are granted or denied reasonable accommodations.  Doc. 47 at 6.  Plaintiff argues this evidence may tend to prove whether non-disabled individuals or certain disabilities are treated more favorably than other disabled individuals.  *Id.*

### 2.    **Defendants' Response**

In their Response, Defendants assert that Plaintiff's discovery requests are irrelevant and overly broad, unduly burdensome, and seek private and confidential information.[5]  Doc. 52 at 2.  Defendants contend that Plaintiff "misquotes, mischaracterizes, and misapplies case law to feign an entitlement to the overbroad, irrelevant materials she seeks."[6]  *Id.*  Defendants contend that

---

[5] *See* fns. 2, 3, and 4, *supra.*

[6] In addressing the case law Plaintiff cites, Defendants assert that Plaintiff's reliance on *Davidson* is misplaced because she has misrepresented how the Tenth Circuit determines the reasonableness of a proposed accommodation.  Doc. 52 at 6.  Defendants assert the Tenth Circuit has held that "[t]he determination of whether a requested accommodation is reasonable must be made on the facts of each case taking into consideration the particular individual's disability and employment position."  *Id.* (citing *Punt v. Kelly Services*, 862 F.3d 1010 (10th Cir. 2017)).  As such, Defendants argue that Plaintiff's assertion that a reasonable accommodation relies on uniform enforcement lacks legal authority.  Doc. 52 at 6.

Defendants next assert that Plaintiff's reliance on *Univ. of Pa.* is misplaced because the issue there was the gathering and disclosure of peer review materials related to a tenure selection process.  *Id.*  Here, Defendants assert Plaintiff is not seeking peer review materials and additionally is not seeking materials pertaining solely to her accommodation but materials related to any APS employee's request for accommodation.  *Id.* at 6-7.

Next, Defendants assert that Plaintiff's reliance on *TriCore* is unavailing because she impermissibly broadens the Tenth Circuit's decision by changing the word "pregnant" to "disabled," and misstates the Tenth Circuit's opinion regarding the district court's ruling regarding comparator evidence.  *Id.* at 7-8.  Defendants argue that, like in *Tricore*, Plaintiff has failed to demonstrate the specific relevance of the broad comparator evidence sought and has failed to show how evidence of individuals in different positions, with different disabilities, and different abilities or inabilities

Plaintiff has not sufficiently articulated the relevance of the wide range of materials she seeks that includes any APS employee, in any position, with any disability, and who have requested accommodations. *Id.* at 5. Defendants contend that comparator evidence can only be relevant where the comparators are similarly-situated and that in the Tenth Circuit similarly-situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline, which is not what Plaintiff seeks. *Id.* (citing *Green v. New Mexico*, 420 F.3d 1189 (10th Cir. 2005)). Defendants contend they have provided Plaintiff with the process their ADA office uses when determining accommodations, including that it relies on "the requesting employee's job description, job function description, employee medical documentation submitted by treating physicians with ADA Accommodation Recommendations, and the request for accommodation form filled out by the employee during the interactive process." *Id.* at 3-4.

Defendants also maintain that responding to Plaintiff's requests would present an undue burden on APS far and above the limited potential benefit of production of the requested materials. *Id.* Defendants assert that responding to Plaintiff's requests would require Defendant APS to sift through every employee ADA file back to June 2021, over 900 employee files excluding reassessments of ADA accommodation requests, review all requests for accommodation, plan and meeting notes therein to determine the accommodations granted, and

---

to work with respect to specific job functions, will have any tendency to show that Defendants' accommodation process was discriminatory based on Plaintiff's disability. *Id.* at 8. Defendants assert this is especially true when their discovery responses reflect that the ADA office relies on employee-specific position requirements, medical information, and requests for accommodation when engaging in the ADA interactive process to identify potential reasonable accommodations. *Id.* Defendants further contend that Plaintiff completely misstates the nature of the *TriCore* opinion by representing that the Tenth Circuit "revers[ed] the district court's refusal to enforce a subpoena requesting comparator evidence." *Id.* at 7. In *TriCore*, the Tenth Circuit affirmed the district court's decision in full, finding that the EEOC had failed to demonstrate the relevance of the comparator evidence sought and that the EEOC's request also was overbroad.

9

summarize the thought process underlying accommodations provided. Doc. 52 at 10. Defendants assert Plaintiff has failed to articulate the relevance of the information sought and that her requests are unduly burdensome and fall beyond the scope of Rule 26(b)(1). *Id.*

Last, Defendants contend they have objected to and maintain that Plaintiff seeks the production of confidential, private, and protected medical and employment information of other APS employees, to which she is not entitled. *Id.* at 11. Defendants request that to the extent any such information or documents are required to be produced, they should be produced pursuant to a confidentiality order. *Id.*

### 3. **Plaintiff's Reply**

In her Reply, Plaintiff concedes she misrepresented the outcome in *TriCore*. Doc. 63 at 1. Plaintiff argues that *TriCore* nonetheless is instructive because it explains how and why Plaintiff's search for evidence about those granted accommodations to telework and those teleworking even without the need for accommodations may lead to relevant and admissible evidence about Defendants' policies, practices and intent.[7] *Id.* at 2-3. Plaintiff argues this information is critical to both her failure to accommodate claim and disability discrimination claim. *Id.* at 3. Plaintiff argues whether individuals are similarly-situated as to their employment positions, their supervisors, or their disability is irrelevant because the focus here is on how Defendants are applying their policies and procedures. *Id.* at 4. Plaintiff further argues that relying on same supervisors to determine "similarly-situated" does not apply here because direct supervisors do not make decisions about accommodations, but instead Defendants' ADA

---

[7] Plaintiff's counsel explains that she believes Defendant APS may have a pattern and practice of failing to accommodate based on this case and two other cases she has prosecuted on behalf of other APS employees. Doc. 63 at 3. Plaintiff's counsel explains that she is trying to "get[] to the root of the problem and fixing it so that other employees are properly accommodated." *Id.*

10

department makes decisions for all APS employees.  *Id.*  As such, Plaintiff contends all APS employees are similarly-situated as to how ADA accommodation decisions are made.  *Id.*

Plaintiff argues that the ADA policy information Defendants have provided is overly vague and merely states that accommodations are generally on a "case by case basis," but that does not shed any light at all on how that process works, and if it works the same every time and the same for all employees.  *Id.* at 4-5.  Plaintiff further argues that it is unclear who the "infrequent, singular" employees are, and what those "circumstances" are that warrant telework from home.  *Id.*  Plaintiff argues she has a right to equitable application of policies, and so she must be able to discover how the policies are applied to others to ensure that Defendants are complying with the law, and that they are applying their policies equitably.  *Id.*

Plaintiff argues that her requests are not overly broad or unduly burdensome because even assuming that all of the accommodation requests APS received since 2021 were for remote work accommodations, having to provide a list of a few hundred names, the date they requested remote work, and whether it was granted is not overly broad or burdensome.  Doc. 63 at 6.

Plaintiff argues that there is no case which holds that comparator evidence is wholly off limits because it might include confidential information.  Doc. 63 at 6-7.  That said, Plaintiff argues that the information she seeks does not infringe on any privacy interest because she is not seeking information about any individual's disability, but information related to employees who are working remotely.  Doc. 63 at 7.  To that end, she seeks individual names, job titles, dates of hire, and the number of hours a week they work from the "remote" location.  *Id.*  Plaintiff argues that this information will allow her to discover how and what "infrequent, singular, circumstances" Defendants are granting telework, whether they are equitably applying policies, and will shed light on which positions Defendants believe are able to be performed remotely.  *Id.*

11

### D. ADA Legal Standards

Under the ADA, a "covered entity" may not discriminate "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Dansie v. Union Pacific Railroad Co.*, 42 F.4th 1148, 1192 (10th Cir. 2022) (citing 42 U.S.C. § 12112(a)). And the statute defines "discriminate against a qualified individual on the basis of disability" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." *Id.* (citing 42 U.S.C. § 12112(b)(5)(A)). A plaintiff need not establish discriminatory intent to show that an action was taken "on the basis of disability . . . [b]ecause 'any failure to provide reasonable accommodations for a disability is necessarily because of disability.'" *Herrmann v. Salt Lake City Corporation*, 21 4th 666, 674 (10th Cir. 2021) (citations omitted). Thus, the employee need present no evidence, whether direct or circumstantial, of discriminatory intent in order to succeed on a failure-to-accommodate claim. *Punt v. Kelly Services,* 862 F.3d 1040, 1048 (10th Cir. 2017).

Failure to accommodate cases should not be classified either as direct-evidence cases or as *McDonnell Douglas* circumstantial evidence cases, but rather as a separate category of cases that require no evidence of discriminatory intent in any form. *Punt*, 862 F.3d at 1049. The Tenth Circuit has adopted a modified burden-shifting framework to assess such claims to provide a useful structure for determining whether the parties have advanced sufficient evidence to meet their respective burdens to prove or disprove the reasonableness of the accommodations offered or not offered. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1204 (10th Cir. 2018) (citing *Punt*, 862

12

F.3d at 1049-50)). Under this modified framework, a plaintiff must make an initial showing that (1) she is disabled; (2) she is otherwise qualified; (3) she requested a plausibly reasonable accommodation; and (4) defendant refused to accommodate her disability. *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020); *see also Punt*, 862 F.3d at 1050. Plaintiff's burden to establish a prima facie case of failure to accommodate is not "onerous." *Id.* (citing *Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1266 (10th Cir. 2015)). If Plaintiff establishes a prima facie case of failure to accommodate, the burden shifts to Defendant to "present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer." *Id.* (quoting *Lincoln*, 900 F.3d at 1204).

"Reasonable accommodation" means "those accommodations which presently, or in the near future, enable the employee to perform the essential functions of [her] job." *Dansie*, 42 F.4th at 1193 (citing *Aubrey*, 975 F.3d at 1007). The ADA provides that a "reasonable accommodation" may include—

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9). "The determination of whether a requested accommodation is reasonable must be made on the facts of each case taking into consideration the particular individual's disability and employment position." *Punt*, 862 F.3d at 1050 (internal quotation marks omitted). Whether a reasonable accommodation exists presents a mixed question of law and fact. *Dansie*, 42 F.4th at 1194. First, the employee must show that an accommodation appears reasonable on

13

its face. *Id.* An accommodation is not reasonable on its face if the proposed accommodation would not enable the employee to perform the essential function at issue. Second, if the employee meets this initial burden, "the burden of production then shifts to the employer to present evidence of its inability to accommodate." *Id.* At that point, the employer must show special circumstances that prove undue hardship in the particular situation. *Id.* Third, if the employer presents such evidence, then the burden shifts back to the employee who must "com[e] forward with evidence concerning [her] individual capabilities and suggestions for possible accommodations to rebut the employer's evidence." *Id.*

The term "essential function" is defined as "the fundamental job duties of the employment position the individual with a disability holds or desires." *Davidson*, 337 F.3d 1179, 1191 (10th Cir. 2003) (citing 29 C.F.R. § 1630.2(n)(1)). Determining whether a particular function is essential is a factual inquiry. *Id.* In making this determination, courts must give consideration to the employer's judgment as to what functions of a job are essential, including those functions contained in a written job description. *Id.* "The question of whether a job requirement is a necessary requisite to employment initially focuses on whether an employer actually requires all employees in the particular position to satisfy the alleged job-related requirement." *Id.* (citing *Tate v. Farmland Industries, Inc.*, 268 F.3d 989, 993 (10th Cir. 2001)). If the employer does require performance of those functions, "the inquiry will then center around whether removing the function would fundamentally alter the position." *Id.* (citing *Milton v. Scrivner*, Inc., 53 F.3d 1118, 1124 (10th Cir. 1995)). This inquiry is not intended to second guess the employer or to require him to lower company standards. Provided that any necessary job specification is (1) job-related, (2) uniformly enforced, and (3) consistent with business

necessity, the employer has a right to establish what a job is and what is required to perform it. *Id.* (citing *Tate*, 268 F.3d at 993).

### E.  Plaintiff's Requested Discovery Is Irrelevant and Overly Broad

As an initial matter, the Court notes that Plaintiff's Complaint brings claims for, *inter alia*, Disability Discrimination (Count I) and Failure to Accommodate (Count III).  Doc. 22 at 9-10, 12-13.  Plaintiff's Disability Discrimination claim alleges Defendants have discriminated against her by failing to accommodate her disability beyond the accommodations which have been provided and that their failure to accommodate her has created a hostile work environment.[8] *Id.* at 9-10.  Plaintiff's Motion and the discovery requests at issue are raised in the context of Plaintiff's failure-to-accommodate claim for which no evidence of discriminatory intent or pretext are necessary for Plaintiff to succeed on her claim.[9]  *Punt,* 862 F.3d at 1048.  As such, Plaintiff's discovery requests for purposes of establishing Defendants' intent with respect to

---

[8] Plaintiff also separately alleges Disability Harassment (Count II) related to Defendants' alleged failure to accommodate and to Defendants' alleged interference with FMLA.  Doc. 22 at 10-12.

[9] Under Tenth Circuit case law, in order to establish a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that he "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability." *Justice v. Crown Cork & Seal Co., Inc.,* 527 F.3d 1080, 1086 (10th Cir.2008); *accord Doebele v. Sprint/United Mgmt. Co.,* 342 F.3d 1117, 1128 (10th Cir.2003); *Poindexter v. Atchison, Topeka & Santa Fe Ry.,* 168 F.3d 1228, 1230 (10th Cir.1999).  In order to demonstrate "discrimination," a plaintiff generally must show that he has suffered an "adverse employment action because of the disability." *E.E.O.C. v. C.R. England, Inc.,* 644 F.3d 1028, 1037–38 (10th Cir. 2011).  An adverse employment action is not a requisite element of an ADA failure-to-accommodate claim.  Rather, "the third element of the general test – that the individual was 'discriminated against because of her disability' is satisfied in a failure-to-accommodate claim as soon as the employer, with adequate notice of the disabled employee's request for some accommodation, fails to provide a reasonable accommodation." *Wood v. Indep. Sch., Dist. No. 5 of Tulsa Cnty., Oklahoma*, No. 24-CV-00098-CDL, 2024 WL 5191292, at * (N.D. Okla. Dec. 20, 2024) (citing *Exby-Stolley v. Board of Cnty. Comm'rs*, 979 F.3d 784, 788 (10th Cir. 2020)).

A hostile work environment claim, which requires plaintiff to allege severe or pervasive harassment, cannot reasonably grow out of a discrete act of discrimination based on failure to accommodate. *Johnson v. BlueCross Blueshield Kansas Sols., Inc.,* No. CV 24-4053-KHV, 2024 WL 4679215, at *6 (D. Kan. Nov. 5, 2024) (citing *See Aramburu v. Boeing Co.,* 112 F.3d 1398, 1409–10 (10th Cir. 1997)); *see also Johnson v. Norton Cnty. Hosp.*, 550 F. Supp. 3d 937, 958 (D. Kan. 2021) (finding that defendant's failure to accommodate plaintiff's disability was a discrete act that did not fall within the confines of a hostile work environment claim) (citing cases)).

15

Plaintiff's claims of discrimination based on Defendants' alleged failure to accommodate her disability are irrelevant.

Next, Plaintiff's counsel urges the Court to heed her concerns that Defendants may have a pattern and practice of discrimination by failing to properly accommodate *other* disabled employees and that her broad discovery requests go to "getting to the root of the problem and fixing it so that other employees are properly accommodated."[10]  Doc. 63 at 3.  Before the Court, however, is Plaintiff's Complaint and not Plaintiff's counsel's cause.  To be clear, nowhere in Plaintiff's Complaint does she allege a pattern and practice of discrimination and it is not known to the Court whether Plaintiff alleged a pattern and practice in her charge of discrimination with the EEOC.  *See TriCore*, 849 F.3d at 939 (explaining that a "charge" of discrimination is required for the EEOC to seek information about alleged discrimination under § 2000e-8). Moreover, an "individual plaintiff[ ] cannot bring pattern-or-practice claims—only the U.S. Attorney General or a certified class can do so." *Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 633 (10th Cir. 2012) (noting that "the method of proof for a pattern-or-practice claim differs from that used for individual discrimination claims, which are analyzed under the burden shifting *McDonnell Douglas* framework.").  "Proving an employer had such a policy does not prove individual employment decisions were discriminatory, although such evidence might be relevant to individual claims under the *McDonnell Douglas* framework." *Id.* (citing *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004)).  In cases involving individual claims of discrimination, the focus is on the reasons for the particular employment decisions.  *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1106 (10th Cir. 2001) (citing *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984)) ("In contrast, the initial focus in a pattern-

---

[10] *See* fn. 7, *supra*.

or-practice case is not on individual decisions, 'but on a pattern of discriminatory decisionmaking.' " (quoting *Cooper*, 467 U.S. at 876)).  Plaintiff's counsel's request for discovery to support her alleged theory of a pattern and practice of discrimination is beyond the scope of Plaintiff's Complaint and, therefore, is not relevant.

The Court also finds that Plaintiff's reliance on certain case law for broad comparator evidence is misplaced.  Plaintiff argues that because her disability is rare, that the reasonableness of her accommodation should *not* be considered based on her disability and employment position,d as Tenth Circuit case law instructs, but instead should be considered by comparing when and to whom Defendants accommodate remote work from home as to any APS employee, whether disabled or not, and the process by which Defendants make that determination.  In support, Plaintiff relies on *Davidson* to argue that the reasonableness of an accommodation is based on whether an employer's policies, job descriptions, and essential functions are 'job-related, uniformly enforced, and consistent with business necessity.'"  Doc. 47 at 2-3, 4-5.  *Davidson*, however, a disparate treatment case, does not address the uniform application of an employer policy regarding a specific accommodation, but addresses whether the plaintiff created a genuine issue of material fact that certain prerequisite experience was an essential function for the position sought, *i.e.,* whether plaintiff was a qualified individual under the ADA.[11]

---

[11] The underlying facts in *Davidson* involved a hearing impaired individual who applied for a non-voicephone position with AOL and alleged AOL failed to hire him because of his deafness in violation of the ADA.  337 F.3d at 1179.  Although AOL at one time had externally hired deaf persons for non-voicephone positions, it had since changed its hiring policy to limit non-voicephone positions to internal reassignments and no longer hired deaf people.  *Id.* at 1183.  AOL's revised hiring policy also required voicephone experience as a prerequisite for placement in any non-voicephone position, thereby eliminating deaf applicants.  *Id.* at 1191.  The Tenth Circuit held that the district court erred in its analysis regarding whether Davidson was a "qualified individual," because the inquiry covers whether job applicants seeking a desired position can perform the essential functions of the job.  *Id.* at 1190.  The Tenth Circuit concluded that plaintiff had alleged sufficient facts to establish a genuine issue of material fact whether voicephone experience was an essential function to the non-voicephone position, notwithstanding AOL's revised hiring policy.  *Id.* at 1191.  The Tenth Circuit did not determine whether waiving AOL's revised hiring policy was a reasonable accommodation because whether the accommodation was reasonable was dependent on determining whether voicephone experience was an essential function of the non-voicephone position.  *Id.* at 1192.  The Tenth Circuit noted that "should a jury decide that voicephone experience is an essential function, the inquiry ends there, because the

Moreover, the Tenth Circuit's analysis in *Davidson* that Plaintiff cites is focused on what constitutes an *essential function* of an employment position. *Davidson*, 337 F.3d at 1190-92. The Tenth Circuit observed that "[t]he question of whether a job requirement is a necessary requisite to employment initially focuses on whether an employer actually requires all employees in a particular position to satisfy the alleged job-related requirement" and whether removing the function would fundamentally alter the position. *Id.* at 1191 (emphasis added). The Tenth Circuit further observed that an employer has a right to establish what a job is and what is required to perform it, "[p]rovided that any necessary job specification is job-related, uniformly enforced, and consistent with business necessity." *Id.* Thus, the terms "job-related, uniformly enforced, and consistent with business necessity" go directly to determining whether a job requirement is a necessary requisite for a particular position and does not establish a legal standard for determining whether an accommodation is reasonable based on an employer's uniform application of policies related to a specific accommodation. Plaintiff's reading and reliance on *Davidson*, therefore, is misplaced.

Plaintiff's reliance on *TriCore* is similarly misplaced. Conceding her misrepresentation to the Court regarding the Tenth Circuit's holding, Plaintiff nonetheless argues that *TriCore* remains instructive because it explains how and why Plaintiff's search for evidence about those granted accommodations to telework, and those teleworking even without the need for accommodations, may lead to relevant and admissible evidence about Defendants' policies, practices and intent. Doc. 63 at 3. The question before the Tenth Circuit in *TriCore*, a disparate treatment case, was whether the district court abused its discretion in declining to enforce an administrative subpoena for pattern and practice evidence in the absence of that claim in the

---

reasonable accommodation requested by Davidson is to eliminate that essential function, which an employer is not required to do." *Id.*

18

charge of discrimination.[12] *TriCore*, 849 F.3d at 933. The Tenth Circuit affirmed the district court's decision, but *in dicta* observed that certain comparator evidence sought regarding accommodations for pregnant and nonpregnant employees, albeit overbroad and having no connection to the charge of discrimination, may have been potentially relevant to determining whether the denied accommodation was based on plaintiff's disability as opposed to her pregnancy and/or whether the proffered reason for plaintiff's termination was pretextual. *Id.* at 941-42. This observation, Plaintiff argues, supports her discovery requests for broad comparator evidence here. The Court disagrees. As previously stated, Plaintiff has mischaracterized the legal standard for what is considered when determining whether an accommodation is reasonable. Additionally, evidence of intent or pretext is not required for Plaintiff to succeed on her discrimination claims based on Defendants' alleged failure to accommodate her disability. Further, the discovery Plaintiff's counsel seeks regarding pattern and practice evidence is improper and beyond the scope of Plaintiff's Complaint. As such Plaintiff's reading and reliance on *TriCore* for broad comparator evidence does not apply to the discovery needs of this case.

With the foregoing in mind, the Court finds that Plaintiff's requested discovery is irrelevant, overly broad, and disproportionate to the needs of determining whether Plaintiff's requested accommodation is reasonable. Tenth Circuit case law provides that "[t]he determination of whether a requested accommodation is reasonable must be made on the facts of

---

[12] The underlying facts in *TriCore* involved an employee with rheumatoid arthritis who became pregnant and was unable to safely perform the essential functions of her phlebotomist position. 849 F.3d at 934. As an accommodation, TriCore offered her an opportunity to apply for other positions within the company for which she was qualified and whose essential functions she could perform. *Id.* She did not apply for a new position and was therefore terminated. *Id.* She filed a charge of discrimination with the EEOC and alleged that TriCore had discriminated against her due to her disability and sex. *Id.* The EEOC thought the ADA required TriCore to reassign plaintiff to a vacant position rather than merely providing her an opportunity to apply for another position such that a violation had occurred. *Id.* On this basis, the EEOC sought to expand its investigation beyond the charge of discrimination to include a pattern or practice of discrimination. *Id.*

each case taking into consideration the *particular individual's disability and employment position*." *Punt,* 862 F.3d at 1050 (emphasis added) (quoting *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1123-24 (10th Cir. 2004)).  Therefore, any discovery related to the reasonableness of Plaintiff's requested accommodation is necessarily confined to Plaintiff's individual disability and her employment position.  That is not what Plaintiff seeks in the discovery requests at issue in her Motion.

### IV.  CONCLUSION

For all of the foregoing reasons, the Court sustains Defendants' objections and finds that Plaintiff's Motion is not well taken and is **DENIED**.

**IT IS SO ORDERED**.

_____
**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**