EXHIBIT

1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ELIZABETH LINDSEY,

      Plaintiff,

v.                                                                              24-cv-00393-GBW-JFR

ALBUQUERQUE PUBLIC SCHOOLS
BOARD OF EDUCATION,
MELANIE BLEA, in her individual capacity,

**Defendants**

<u>**DEFENDANTS' STATEMENT OF DISCOVERY DISPUTES**</u>

      Pursuant to the Court's Order Setting Informal Discovery Dispute Status Conference [Doc. 66], Defendants' counsel attempted to confer with Plaintiff's counsel via phone and email for the purpose of producing a joint position statement. As of the time of submission, Plaintiff's counsel did not provide a draft position statement for Defendants' counsel to review and did not engage in a phone call to meet and confer, despite multiple requests from Defendants' counsel. Accordingly, Defendants submit their position on the two issues raised in Plaintiff counsel's January 21, 2025 email to the Court.

**DEFENDANTS' POSITION**

*Production of Emails & Metadata*

      As discussed during the Informal Discovery Conference with the Court on December 19, 2024, Defendants supplemented their responses to Plaintiff's First Set of Discovery to provide emails responsive to **Request for Production No. 1, 4, and 10**. Defendants advised at the aforementioned conference that it was processing over 12,000 emails and attachments given the broad search terms requested by Plaintiff's counsel. Additionally, Defendants advised that the vast majority of those emails contained correspondence about student Individualized Education Programs ("IEPs") given the nature of Plaintiff's position and job duties. It was determined on December 19, 2024 that Defendants had until January 20, 2025 to produce these emails, following entry of the Confidentiality Order [Doc. 59]. Defendants complied and produced these emails on January 20.

      At no time during the December 19, 2024 call did Plaintiff's counsel request metadata for that production or specify the format in which she hoped to receive responsive emails.

      On January 21, 2025, Plaintiff's counsel inquired as to where the native email files had been produced. Defendants' counsel attempted to engage in good faith correspondence on this issue, asking what information Plaintiff's counsel felt was lacking that could be provided by the

meta-data. Plaintiff refused to provide a substantive response to this question and has wholly failed to describe to date why this request is relevant and proportional to the needs of the case.

As Defendants have expressed to Plaintiff's counsel, the definitions provided with Plaintiff's discovery requests do not specify that the emails should be produced in native format. Instead, the instructions state: "All metadata should be preserved and produced with requested documents.  These documents should be produced in native format *if this format is readily accessible* such as docx, *pdf,* etc.  If native format is proprietary or requires specific software to be accessible, *these files should also be produced in a readily accessible format (pdf,* TIF, etc), *with care taken to preserve all associated metadata*." A full copy of this definition is attached hereto as **Exhibit A.** The emails' native format is not readily accessible under this definition – as we cannot produce as .pst file (the actual email) as we would have no way to mark on the file what is confidential, privileged, or overall bates labeled. We would also not have any way to make redactions if we produce .pst files. As such, we provided the emails as PDF files (among the type of files deemed accessible and proper in Plaintiff's definition) and took care to preserve the meta-data (which we are looking into how we might be able to produce – likely as a log, a manner also expressly contemplated within Plaintiff's counsel's definition). In Defendants' view, they have fully responded to the requests at issue with the email production provided, even without meta-data.

### *Numerosity Objection to Plaintiff's Second Set of Interrogatories*

Plaintiff's Second Set of Interrogatories, served December 2, 2024, exceeds the number of interrogatories permitted by the Federal Rules of Civil Procedure and by the Court's Order [Doc. 15]. Accordingly, pursuant to applicable case law cited in Defendants' responses thereto, attached hereto as **Exhibit B**, Defendants opted not to provide substantive responses to the discovery to preserve their numerosity objection. Defendants expressly stated in this response that "Defendants are open to discussing with Plaintiff how to limit discovery, and which, if any, of the requests below they would be willing to respond to…." Plaintiff raised this issue to the Court immediately without any discussion.

To aid in the discussion of this issue, by Defendants' count, Plaintiffs have asked at least **82** separate interrogatory requests taken together:

|  | **Running Total** |
|---|---|
| • **Interrogatory Nos. 2-14, 16-18,** and **20-21** can reasonably be considered single requests – they count as 18 requests altogether. | **18** |
| • Plaintiff's **Interrogatory No. 1**, as previously discussed by the Court arguably constitutes at least 24 interrogatories because it asks Defendants to identify each individual supplying information for each numbered interrogatory (14 interrogatories) and request for production (10 requests for production) in Plaintiff's first set of discovery. <u>Defendants count this as **4 interrogatories,** as it identified 4 departments/individuals and was asked to supplement as to the</u> | **22** |

<u>specific requests for which they each provided responsive information – which Defendants did.</u>

- Plaintiff's **Interrogatory No. 15** seeks a narrative response describing the reasonable steps taken by Defendants with respect to *each request for accommodation* made by Plaintiff under the ADA. There are 17 such requests in Plaintiff's ADA file for APS – which has been provided in full – so this request constitutes **17 interrogatories**.

- Plaintiff's **Interrogatory No. 19** seeks a narrative response describing APS efforts to cover Plaintiff's workload for *each instance of FMLA leave used by Plaintiff* since January 2019. This constitutes **at least 28 interrogatories** (it is harder to put a firm number since Plaintiff had intermittent FMLA leave rather than longer periods of leave), as Plaintiff used leave at least once per week in 28 weeks between April 29, 2023, and April 28, 2024. Plaintiff's entire FMLA leave file has been produced in this litigation.

- Plaintiff's **Interrogatory No. 22** seeks a narrative response describing *each interactive or collaborative step* taken by Defendants in 2024 to ensure that Plaintiff was reasonably accommodated. This request constitutes **at least 2 interrogatories** as Plaintiff's ADA file shows at least 2 ADA interactive process meetings occurred in 2024.

- Plaintiff's **Interrogatory No. 23** asks Defendants to state and describe each defense or contention that Defendants intend to use against Plaintiff's Second Amended Complaint. This request constitutes **at least 13 interrogatories** as Defendants included 13 defenses in their Answer to Plaintiff's Second Amended Complaint.