## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO


ELIZABETH LINDSEY,

     Plaintiff,

v.                                                                      Case No. 1:24-CV-00393 GBW/JFR

ALBUQUERQUE PUBLIC SCHOOLS
BOARD OF EDUCATION,
MELANIE BLEA, in her individual capacity,

     Defendants.

### DEFENDANTS' RESPONSE OPPOSING[1]
### PLAINTIFF'S SECOND MOTION TO COMPEL, FIRST MOTION TO SHOW CAUSE, AND FOR RULE 37 SANCTIONS

Plaintiff's Motion[2] is discordant with the Rules of Civil Procedure, having contravened at least five local rules and the Rule 37 requirement of good faith, and the Court's Order requiring informal discovery conferences. It is also fails to cite a single case to support its requests for relief. Plaintiff is not entitled to the materials sought within her Motion or the sanctions she seeks as her arguments claiming that defense counsel has made material misrepresentations are belied by the factual record. The Motion should be denied in its entirety.

### BACKGROUND

The background[3] in Plaintiff's Motion is incomplete and mischaracterizes the actions and statements of both defense counsel and this Court. Plaintiff's skewed recitation of facts raises three

---

[1] Plaintiff failed to determine that her Motion was opposed prior to filing, contrary to D.N.M.LR-Civ. 7.1(a).

[2] As with Plaintiff's First Motion to Compel [Doc. 47], Plaintiff has failed to comply with D.N.M.LR-Civ. 37(1)(b) here. *See* Defendants' Response Opposing Plaintiff's First Motion to Compel, [Doc. 52] at n.1. The Motion complains about all emails produced by APS in response to Plaintiff's First and Second Sets of Discovery, but only attaches one request and response. *See* Ex. 3 to Motion; Motion, at 1 ("Included in those requests, were ***several requests*** involving production of emails and other documents.") (emphasis added). Thus, Plaintiff has failed to attach all discovery requests and responses at issue in in the instant Motion. Furthermore, Plaintiff has not identified with any specificity the discovery responses she takes issue with, beyond Request for Production No. 4. *See generally*, Motion. Therefore, Defendants are attaching copies of the requests and responses that Plaintiff's Motion has seemingly set at issue as **Exhibit A**, with the exception of Request for Production No. 4, which is included in Exhibit 3 to the Motion.

[3] Plaintiff attached 103 pages of exhibits to her Motion, fifty-three pages in excess of the page limit, without seeking any stipulation from defense counsel. This conduct violates D.N.M.LR-Civ. 10.5. Comparatively, defense counsel sought and obtained permission from Plaintiff's counsel to provide more than 50 pages of exhibits in this response.

issues relevant to the relief sought in the Motion: (1) the email search terms used and the number of results generated; (2) the necessity of a confidentiality order based on the email search results; and (3) the format in which APS has produced the results of its email searches.[4]

### (1) Email Search Terms Used and Results Generated

Within Plaintiff's first set of discovery to Defendants, two requests specifically requested emails, requiring APS to complete broad email searches. *See* Plaintiff's First Interrogatories, Requests for Production, and Requests for Admission, relevant portions of which are attached hereto as **Exhibit B**. Request for Production No. 4 seeks "any and all emails, text messages, and/or documents *sent to or returned by Plaintiff* involving or in any way related to her disabilities and/or FMLA from January 2019 to present." *Id.* This request sought over five years' of emails sent from or to Plaintiff. Request for Production No. 10 sought "all documents and communications, including but not limited to emails, memos and records, including, mentioning, and/or pertaining to Plaintiff, from January 2022 to present" from fourteen email accounts used by APS departments or employees. *Id*. As stated in Defendants' objections, these requests were overbroad, causing undue burden on APS, as the requests span multiple years, multiple email accounts, seek materials Plaintiff has access to in her own right, and broadly seek any and all communications which concern or include Plaintiff as sender or recipient. Ex. A.

Despite the breadth of these requests, Plaintiff criticizes the number of email files produced initially by APS on January 20, 2025, and in APS's reduced production on February 7, 2025. *See* Motion, at 2, 4-5. In so doing, Plaintiff has failed to discuss or even acknowledge the good faith communications between counsel ahead of each production to set the search terms and parameters for APS's email searches. *See generally,* Motion. To be clear, APS did not unilaterally decide on search terms to identify materials responsive to the Requests for Production No. 4 and 10. Instead, Plaintiff and APS, through respective counsel, reached an initial agreement as to search terms on November 13, 2024, ahead of the first informal discovery conference. *See* Joint Statement of

---

[4] Notably, Plaintiff's background section is completely devoid of any reference to her second set of discovery to Defendants, for which she seeks relief in the instant Motion. *See* Motion, at 15-16.

Discovery Disputes, submitted to the Court on November 15, 2024, attached hereto as **Exhibit C** (demonstrating that "the Parties agreed to an initial course of proposed supplementation" with respect to Requests for Production Nos. 4 and 10, and that Plaintiff reserved her right to later challenge the sufficiency of the email search terms decided during the November 13, 2024 meet-and-confer). To get responsive results for Request for Production No. 4. the parties agreed to initially run a search within Plaintiff's APS email account for emails sent or received from January 2020 to present which contained one or more of the following terms: "accommodation," "accommodations," "FMLA," "telework," or "remote work." *See* Email Exchange, dated January 30 to February 6, 2025, at 8-9, attached hereto as **Exhibit D**. With respect to Request for Production No. 10, APS agreed to search each of the fourteen listed accounts for emails sent or received between July 2022 to present which contained the following terms: "Elizabeth Lindsey," "Beth Lindsey," or both "Beth" and "Lindsey." *Id.* In reaching this agreement, defense counsel warned Plaintiff of their concern that, given Plaintiff's role as head special education teacher in charge of managing student Individualized Education Program (IEPs), that searching her inbox for "accommodation" would likely draw a lot of false positives. Ultimately, there were over 12,000 individual emails identified by the foregoing searches, which defense counsel reviewed for privilege, and produced subject to entry of a confidentiality order. *See* Section (2) *supra*; *see also* Motion, at 2-3. As predicted, the search results contained many results which, while containing search terms identified by counsel, have no bearing on the instant action.

The parties discussed the extraneous material captured by the initial search terms with the Court during a third informal discovery conference on January 30, 2025. Within her Motion, Plaintiff incorrectly states that "[t]he Court even chastised Plaintiff's counsel stating that Plaintiff was violating the spirit of Rule 26 with her overly broad requests" with respect to the search terms. This is incorrect. The Court simply advised and ordered both parties to meet and confer to see if there was a way in which the search terms could be narrowed. The only times during the conference where the Court reminded Plaintiff to comply with Rule 26 was with respect to the rule's

proportionality requirement.[5] Plaintiff's description of the Court's conduct as antagonistic to her counsel, especially with respect to the search terms, mischaracterizes the discussion which took place during the informal conference and is wholly improper. This is especially true, as Plaintiff attempts to leverage this faulty description to suggest that Defendants intentionally gave her results that she did not ask for, which are beyond the scope of discovery. *See* Motion, at 4 ("[Plaintiff's] counsel attempted to explain that Plaintiff had never sought this kind of information and it was way beyond the scope of anything in this litigation."). Nevertheless, at the Court's direction, the parties ultimately refined the search terms further on January 30, 2025, immediately following the conference. *See* Ex. D. While finalizing the production for February 7, defense counsel continued to communicate with Plaintiff's counsel to avoid production of false positives. *See* Ex. D, at 2-4.

Plaintiff has conceded that the refined search terms resulted in a much smaller number of documents, which APS produced on February 7. *See* Certificate of Service [Doc. 73]; Motion, at 4. However, she baselessly claims that this smaller production "contained many completely different documents" from the initial production, as APS was clear that it would run the refined search terms within the existing production to produce a smaller set of documents, which it did. *Id.* Plaintiff has failed to identify any documents produced in the February 7 production that had not already been produced in the January 20 production and, therefore, cannot support any allegation that APS deviated from the plan which Plaintiff's counsel agreed to on January 30. *See* Ex. D, at 8 (memorializing discussion among counsel for revised email search); D.N.M.LR-Civ. 7.3(b) (requiring that "[p]arties must submit evidence, in the form of declarations, affidavits, deposition excerpts, or other documents, in support of allegations of fact."). Plaintiff also continues to criticize APS's production as containing "still hundreds, if not thousands of pages of duplicative and/or irrelevant records." *See* Motion, at 4. This criticism lacks merit, as Plaintiff has not identified any purportedly irrelevant emails with any specificity, nor has she demonstrated that

---

[5] Indeed, the Court told Plaintiff she may have to compromise with respect to the format in which emails were produced to allow Defendants to Bates label, mark, and otherwise redact records. The Court also advised Plaintiff of its inclination to agree that meeting-by-meeting narrative accounts were more properly sought in depositions, rather than the interrogatories in Plaintiff's Second Set of Discovery to Plaintiff.

search terms were absent from any such emails. *See generally*, Motion; D.N.M.LR-Civ. 7.3(b). Further, Plaintiff failed to acknowledge that this issue was the subject of good faith correspondence which explained why any duplicates exist within the production. *See* Ex. 6 to the Motion, at 2 ("As for the duplicates, those documents were sent to multiple people on an email string. In doing our due diligence of making sure that you have all responsive documents, you are going to end up with duplicates."). Plaintiff's counsel did not respond or acknowledge defense counsel's February 11 good faith response, or attempt to engage in any further good faith discussions on this issue.

### (2) The Propriety of a Confidentiality Order

Plaintiff suggests that Defendants' request for a confidentiality order, a proposed copy of which was circulated with Defendants' Second Supplemental Responses to Plaintiff's first set of discovery on December 6, 2024, was untimely. *See* Certificate of Service, [Doc. 48]; Motion, at 2. However, as demonstrated above, Plaintiff's counsel and defense counsel did not reach an agreement on email search terms until November 13, 2024, and the corresponding search generated over 12,000 individual emails which defense counsel then had to review. Upon review, APS determined that several of the emails within Plaintiff email account (both to and from Plaintiff) concerned or constituted student educational records which are protected by FERPA given her involvement with student IEPs which all contain the word "accommodation" (one of the email search terms). *See* Section (I) *supra*; *see also* December 6 letter, attached as **Exhibit E**. Accordingly, APS timely raised the confidentiality issue, as the need for such an order did not arise until APS was able to review the search results generated by the parties' agreed search terms.

With respect to the scope of the Order, this issue was addressed in the second informal discovery conference held with the Court on December 18, 2024. Thereafter, the Court reviewed proposed drafts from each party and entered an Order on January 6, 2025. Contrary to Plaintiff's assertions in the Motion, no briefing was required regarding the proper scope of the confidentiality order. *See* Motion, at 7. APS then timely produced the responsive results of the email search on January 20, 2025, the deadline set by the Court. *See* Certificate of Service, [Doc. 65].

**(3) Proper Format for Produced Emails and Preserved Metadata**

There is no dispute that Defendants timely served their responses and objections to Plaintiff's first set of discovery on October 21, 2024. The Motion is correct in stating Defendants did not object specifically to producing emails as native files in its initial objections to the discovery requests. *See* Motion, at 1. However, in raising this issue, Plaintiff ignores crucial context which demonstrates that Plaintiff's request for the emails to be produced in native .msg or .pst format was not clear from provided instructions and, further, that when issues of format were raised by Plaintiff's counsel, Defendants have maintained that such a production is unfeasible, disproportionate to needs of the case, and overbroad.

First, Plaintiff's provided definitions and instructions do not clearly seek the production of emails in native format. *See* Ex. B. Plaintiff's requests contain a set of definitions spanning five pages which purportedly apply to both the interrogatories and requests for production. *See* Ex. B at 2 (as to interrogatories), and 13 ("For all following requests [for production], see the above definition section for *format and metadata requirements* for all records/documents/information produced.")[6] (emphasis added). The instructions define documents as "any writing or record of any type or description, including, but not limited to… electronic mail messages." Ex. B, at 2. With respect to metadata, the instructions state:

> All metadata should be preserved and produced with requested documents. These documents should be produced in native format *if this format is readily accessible* such as docx, pdf, etc. If native format is proprietary or requires specific software to be accessible, these files should also be produced in a *readily accessible format (pdf, TIF, etc),* with care taken to preserve all associated metadata. In such cases, *associated metadata may be produced in a* .csv *or excel format*, with care taken to ensure all metadata is captured and displayed in a readable format.

_____

[6] As set forth above, Plaintiff's Requests for Production have their own prefatory note which, in the first instance, refers counsel back to the five pages of instruction provided ahead of the interrogatories. In fairness, this note also states that "Emails should be produced in .msg or .pst formats with care taken to preserve original metadata." Ex. B, at 13. However, Defendants reasonably believed they were applying the proper definitions when utilizing the definition for documents and associated metadata included earlier in the document. Plaintiff's conflicting instructions were far from clear that .pst or .msg files were required.

Ex. B, at 3 (emphasis added). Textually, these instructions expressly apply to emails and fail to identify .pst or .msg files as readily accessible. Further, Plaintiff's instructions specifically state that PDF files are readily accessible and that producing a spreadsheet with associated metadata is sufficient. *Id.*; *see* Motion at 4-5, and Ex. 14 (acknowledging that Defendants' email production, as supplemented on February 7, 2024, with respect to Plaintiff's first set of discovery, produced emails as searchable PDF files, with associated metadata provided in a spreadsheet). To date, Plaintiff has failed to articulate why producing emails in a form specifically contemplated by her prefatory discovery instructions is improper. *See generally*, Motion.

Additionally, once this issue was raised by Plaintiff, defense counsel voiced its confusion with the definitions and identified issues inherent to the production of .pst and/or .msg files, including inability to redact, mark as confidential or Bates label, and keep track of what has been produced (given that .msg or .pst files can be edited, manipulated, and forwarded as if originals), as discussed more fully below. *See* Section I(B) *infra*. Defense counsel also asked Plaintiff's counsel to articulate the reason she needed metadata and what information could not be discerned from produced PDFs. Plaintiff's counsel refused to provide any answers to the foregoing questions. *See e.g.*, Email Exchange, dated, January 21-27, 2025, attached hereto as **Exhibit F.** Thereafter, the parties and the Court attended the third informal discovery conference on January 30, 2025, during which the parties discussed the search terms used to generate the production and its format. *See also* Section (1), n.5 *supra*. During this conference, the Court ordered the parties to meet and confer by January 31, 2025, on these issues and advised each party that they would have to compromise to try to accommodate the concerns of the other party. The Court also reminded parties about the proportionality requirement under Rule 26 and that the decisions parties reached with respect to the scope and form of production should be guided by the amount in controversy, the importance of the information sought, and the burden and expense placed on each party.

Subsequently, the parties engaged in two good faith conversations by phone. The first took place following the informal discovery conference on January 30, 2025, while the latter took place the following day on January 31, 2025. On January 30, the parties, through respective counsel,

were able to agree to a refined set of search terms. *See* Ex. D, at 8-9. Defense counsel memorialized the agreed terms in an email, which advised Plaintiff's counsel to clarify if she felt there had been any misunderstanding with what had been agreed; Plaintiff's counsel never did so. *See generally*, *id.* On January 31, the parties, through counsel, discussed the format for production. Defense counsel repeated its concerns about producing native .pst files given need to Bates label, redact, or mark certain files as confidential on the file itself in a way that, were it circulated to some third party, APS would know where that file originated from the face of the document. Plaintiff repeated her objections to the modification of files by converting them to PDF. When prompted by defense counsel, Plaintiff explained that for an email production to be usable to her, she needed to have the ability to sort productions by date or email chain, have the accompanying metadata to reflect any changes since the email was originally sent, and easily search the documents without having to run optical character recognition (OCR) on the production herself. Based on that definition of usable, defense counsel proposed and informed Plaintiff's counsel that it planned to produce the refined email search production as searchable PDF files with an accompanying excel spreadsheet with preserved metadata for each email. This spreadsheet would have line items for date/time and the subject line of each email so that Plaintiff's counsel could sort the emails chronologically or by email chain as needed. *See* Ex. D, at 7-8. Defense counsel also advised Plaintiff's counsel during the January 31 call and via email afterward that if she had any orders or case law supporting mandated production of .pst or .msg files, defense counsel would review and reconsider its position as needed. Plaintiff's counsel did not respond with respect to this plan in writing until February 6, the date before the production was supposed to be produced. *See id.*, at 1. In that response, Plaintiff failed to include any case law, orders, or other authority supporting production of .pst or .msg files. To comply with the Court's mandate from the January 30 informal discovery conference, defense counsel proceeded with its production as planned on February 7, and also produced the load file to Plaintiff's counsel, such that she could load the PDFs and accompanying metadata into an ediscovery system of her choosing if she were so inclined. *Id.*

8

Beyond failing to discuss the factual context underlying Defendants' objections regarding the format of the email search production and the corresponding good faith discussions surrounding this issue, Plaintiff's Motion also completely mischaracterizes the form in which APS produced its refined email production on February 7, 2025.[7] Indeed, within her Motion, Plaintiff represents to the Court that "Defendants produced emails in random chains instead of individually, so the same emails appear repeatedly and it's impossible to determine whether the entire chain as has been produced." Motion, at 4. This is incorrect and misconstrues the very nature of email communication. Defendants produced individual emails which had at least one of the refined search terms within the body of the email. However, given the nature of emails, prior correspondence in the same chain or thread is included below an individual email. That individual emails "repeat" prior emails from a chain is even discernible from the email included as Exhibit 6 to the Motion which contains a February 11 email above an underlying February 10 email with the same subject matter. The need to produce each individual email with responsive search terms , rather than one complete email thread, protects against any instances in which individuals did not respond to the latest email in the thread, such that all emails can be produced, provided they have a responsive search term.

Plaintiff has also misinformed the Court regarding the metadata spreadsheet that Defendants produced alongside its February 7 production. Plaintiff stated that the "[m]etadata is incomplete and only includes the last email in a chain, not the metadata for the entire chain." This is incorrect. Defendants produced 1,222 files on February 7 and the metadata chart has 1,223 line items (one of which contains headings). Accordingly, Defendants' metadata chart has one line item for each file produced in the email search production, which includes the emails and any attachments thereto. *See* portions of metadata spreadsheet, produced as **Exhibit G**.[8] Each line of

---

[7] There can be no dispute that Defendants produced the emails on February 7 in a searchable form, as evidenced by Exhibits 7 to 13 to Plaintiff's Motion. It is also undisputed that Defendants produced any excel spreadsheets which were attached to any responsive email in their native form. *See* Motion at 8 and Exs. 4, 6. This was done because there were only 19 excel attachments and the spreadsheets do not easily convert to PDF files in an easily readable format, justifying an exception. *Id.*

[8] The metadata excel sheet has 27 columns and 1123 rows of information. Printed with portrait orientation with normal margins, it comprises 374 total pages. Accordingly, Exhibit G contains a screenshot demonstrating that the last line

that spreadsheet which pertains to an email file (which were originally .msg files but were produced as searchable PDF files) has the following information: Bates ranges; original file extension; author; creation date and time; subject line for email; the individual who last saved the file; the date and time it was last saved;[9] the recipients of the email; the individuals carbon copied on the email; the individuals blind carbon copied on the email; the date and time the mail was sent; a list of any attachments; mail importance; mail message flag (which identifies whether the email has any attachments and was read or sent); whether any mail delivery reports, read receipts, or replies were requested; and the mail sender's email address. *Id.* Plaintiff's counsel could sort the spreadsheet by any of these categories, including subject line or time sent, and be able to review the corresponding bates ranges in any order she deemed most helpful. The intent was to provide the functions Plaintiff's counsel represented would make a production "usable" while still allowing the vast majority of files to be Bates-labeled directly on the document itself. *See* Ex. D, at 7-8.

## LEGAL STANDARD

The proper scope of discovery is expressly limited to information and/or materials which are "proportional to the needs of the case." *Landry v. Swire Oilfield Servs., LLC,* 323 F.R.D., 375 (D.N.M. 2018) (quoting Fed. R. civ. P. 26(b)(1)). Among the factors that bear upon proportionality are "the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* (quoting Fed. R. Civ. P. 26(b)(1)). "A district court is not, however, 'required to permit plaintiff to engage in a fishing expedition in the hope of supporting [her] claim." *Id.* (quoting *McGee v. Hayes*, 43 F. App'x 214, 217 (10th Cir. 2002)). Further, "broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Id.* at 376 (quoting *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995)). Lastly, "a plaintiff's 'broad theory of the

___

item is line number 1123, and 11 pages which shows all columns for the first 34 files produced in the February 7 production. This has been done to provide the Court an accurate sense of the contents and format of the spreadsheet provided without overwhelming the Court with exhibits. To the extent the Court would like to review the Excel spreadsheet in Excel or some other program, defense counsel is happy to provide a copy for the Court's review.

[9] In this case, the date included in the last saved and file creation columns for email files (rather than their attachments which have independent save data) corresponds to when the email file was batched pursuant to APS's search based on the initial terms, which occurred shortly after November 13, 2024.

case does not justify more expansive discovery unless the discovery is relevant to plaintiff's actual claims or defenses' or the plaintiff shows good cause." *Buster v. Bd. of Cnty. Comm'rs for Lincoln Cnty.,* No. 21-cv-1208, 2023 WL 4202628, at *4 (D.N.M. June 27, 2023) (quoting *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1193 (10th Cir. 2009)).

## ARGUMENT

I. **The Court Should Not Compel Defendants to Produce Any of the Information or Materials at issue in the Motion.**

A. The Court Should Not Compel Defendants to Produce Additional Insurance Information.

Plaintiff raised the sufficiency of Defendants' initial disclosure as to its insurance coverage for the first time within the instant Motion. There was no attempt to confer in good faith contrary to Rule 37(a)(5)(A) and no attempt to engage in an informal discovery conference on this issue. Plaintiff's bases for raising this issue is an undated good faith conversation and a representation for which Plaintiff has provided no evidence. *See* D.N.M.LR-Civ. 7.3(b); Motion, at 5. On these bases alone, the Motion should be denied with respect to this issue.

Further, Defendants should not be compelled to provide additional insurance information at this time as Plaintiff's initial demand is within the threshold for which APS is self-insured as represented. Defendants believe that Plaintiff is conflating defense counsel's representations regarding settlement authority with the threshold limit for which Defendant is self-insured. Accordingly, Plaintiff's claim on this issue is procedurally improper and, at best, substantively premature and should, thus, be denied.

B. The Court Should Not Compel Defendants to Produce Emails in Native Format.

Plaintiff has claimed an entitlement to receive native .pst and .msg files from Defendants without responding or attempting to compromise to accommodate Defendants' concerns about the production of thousands of files not capable of being Bates-labeled, redacted, or marked as confidential on the face of the document. *See* Ex. F. Plaintiff claims this entitlement without citing any case law in support, contrary to D.N.M.LR-Civ. 7.3(a). She also claims this entitlement

without making any demonstration that her receipt of the materials in the requested form will provide her with sufficient benefit to justify the reproduction of over 1,122 files from APS, a public entity, especially where the instant production allows Plaintiff to search the emails, view their content, view the metadata, and sort the files by email chain and date sent, the very aspects which make a production "usable" in Plaintiff's counsel's estimation. *See* Section (3) *supra*. Additionally, Defendants provided a load file with all the PDFs and metadata which allows Plaintiff to populate all these materials into any e-discovery tool of her choosing. *See* Ex. D, at 1.

Beyond these failures, Plaintiff's argument relies on misstatements of fact. Defense counsel has argued that the definition section within Plaintiff's first set of discovery, to which the email production is responsive, does not identify either .pst or .msg formats as "readily accessible" and have also identified that the definition section contemplates the production of PDFs and an accompanying excel spreadsheet with metadata. *See id.*; Ex. B. Plaintiff has misstated this context-specific argument for a blanket statement by defense counsel that native format files are not readily accessible, which is not supported by the factual record in this case. *See* Motion, at 8. Additionally, Plaintiff has characterized Defendants' export of the native files as "modification of the files," but has not identified any data that is being modified or lost which she needs to discover in this case. *See* Motion, at 8. The conversion of documents to PDF is very distinct from modifying the content of documents. Critically, one of Defendants' repeated concerns with the production of native email files is that these files can be modified and forwarded as the original by the recipient, especially as these files cannot be Bates-labeled on the document itself. This concern goes unaddressed in Plaintiff's Motion. Additionally, as described in Section (3) above, Plaintiff has mischaracterized what Defendants have produced, both with respect to the emails and the metadata chart.

Additionally, Plaintiff's argument is inconsistent with available authority. Plaintiff's mere identification of her preferred form of production does not entitle her to that form. *See S2 Automation LLC v. Micron Tech., Inc.*, 2012 WL 3656454 (D.N.M. Aug. 9, 2012) (when reaching a determination on a motion to compel, "[t]he court is not limited to the forms initially chosen by the requesting party… [and] [Rule 34(b)] does not require a party to produce electronically stored

information in the form in which it is ordinarily maintained, as long as it is produced in a reasonably usable form."). Parties should produce the materials in a form that is similar and comparative to the original form so, where "the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature." *Id.* Defendants have taken care to produce the emails and metadata in a way that allows the production to be readily accessible and "usable" to Plaintiff's counsel. *See* Ex. D at 8-9. Additionally, courts have held that production in PDF format is accessible and that parties seeking native format production must show a particularized need. *See Nat'l Jewish Health v. WebMD Health Services Group, Inc.* 305 F.R.D. 247 (D. Colo. 2014); *Wyeth v. Impax Laboratories, Inc.*, 2006 WL 3091331 (D. Del. 2006). Here, Plaintiff has failed to show a particularized need for an alternate production. Accordingly, no additional email production should be compelled.

Finally, Plaintiff's request that the Defendants produce the full February 7 email production in the native format is not in keeping with Rule 26's proportionality requirement. Defendants have already produced the materials in a usable way and have borne the burden of reviewing a broad initial set of email search results. "The proportionality requirement was relocated to 26(b)(1) to address the 'explosion' of information that 'has been exacerbated by the advent of e-discovery.'" *See Benavidez v. Sandia Nat'l Laboratories,* 319 F.R.D. 696, 717-718 (D.N.M. 2017). The proportionality concept seeks to "eliminate unnecessary or wasteful discovery," and to impose "careful and realistic assessment of actual need." *Id.*, at 718. Here, Plaintiff asks Defendants to reduplicate efforts unnecessarily just to have the type of file she wants, even though the production she has is sufficient and proportional to her need to discover communications within APS regarding the ADA accommodations at issue. Plaintiff has failed to prove otherwise. It would be unduly burdensome and discordant with Rules of Civil Procedure to compel further production of the produced emails from APS, a public entity, especially given the costs associated with ediscovery. *See* Nicholas M. Pace and Laura Zakaras, "Where the Money Goes: Understanding Litigant Expenditures for Producing Electronic Discovery" www.rand.org (2012);*Wachocki v.*

*Bernalillo Cnty Sheriff's Dept.*, 2010-NMCA-021, ¶ 43, 147 N.M. 720, 228 P.3d 504 ("It is self-evident that preservation of the public treasury constitutes an important governmental interest.") Plaintiff's Motion should be denied with respect to the email production, as it seeks a further email production of materials already produced in a usable format.

    C.   <u>The Court Should Not Compel Defendants to Produce Any Further Materials in Response to Plaintiff's Second Set of Discovery At This Time.</u>

Plaintiff raised the sufficiency of Defendants' production in response to her second set of discovery for the first time within the instant Motion, having failed to pursue an informal discovery conference as is required by this Court. Pursuant to this Court's Order [Doc. 15], "[d]iscovery motions may be summarily denied if a movant fails to conform to this requirement." Plaintiff does not show good faith attempts to address Defendants' numerosity objection, despite multiple requests from defense counsel to do so. *See* Ex. A (within numerosity objection to second set of interrogatories defense counsel acknowledges its willingness to discuss and narrow the requests in good faith); Emails dated February 11-12, 2025, attached hereto as **Exhibit N**. As Plaintiff asserted "[i]t is impossible to have a good faith conference without good faith being present for ***both parties***." Motion, at 6 (emphasis added). Good faith has been shown by Defendants with respect to this issue, but has not been shown by Plaintiff, justifying denial of the Motion with respect to Plaintiff's second set of discovery. Fed. R. Civ. P. 37(a)(5)(a).

Nevertheless, in a continued show of good faith, defense counsel has supplemented its email production in response to Request for Production No. 11 contemporaneously with filing this Response. *See* Certificate of Service, filed March 27, 2025. Accordingly, a further production should not be compelled from Defendants, especially prior to required good faith communications.

    II.    **Pursuant to Rule 37, the Court Should Not Impose Sanctions Against Defendants or Defense Counsel, Even If the Motion is Granted.**

    A.   <u>Plaintiff Has Not Shown Any Entitlement to Fees.</u>

Plaintiff's request for her "costs and fees for any and all discovery disputes which would not have been necessary had Defendants acted in good faith" is vague and ambiguous and lacks

14

any supporting authority contrary to D.N.M.LR-Civ. 7.3(a). As an initial matter, it is unclear whether Plaintiff is seeking her fees for participation in the informal discovery conferences and good faith communications with counsel on the issues raised in her Motion. Such fees are not recoverable, as parties have a Rule 37 obligation to communicate with counsel to avoid the necessity of motions practice. *See Miler v. Paschall Truck Lines, LLC*, 2021 WL 919868 at *2 (D.N.M. Mar. 10, 2021) (acknowledging that Rule 37(a)(5)(A) does not allow for payment where the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action). On these same grounds, Plaintiff is precluded from recovering fees associated with the portions of her motion which seek supplementation of Defendants' insurance information, communications between Ms. Rodriguez and Ms. Castille, *see* Section II(C)(4) *supra,* or supplemented responses to Plaintiff's second set of discovery as Plaintiff failed to engage in good faith communications and/or an informal discovery conference with respect to these issues. *See also* Order [Doc. 15] (requiring informal discovery conferences prior to motion to compel). Next, Plaintiff's request for fees associated with briefing on the confidentiality order is wholly baseless, as no such briefing ever occurred, as set forth above.

Furthermore, Plaintiffs' request for her fees and costs incurred in filing the Motion necessarily fails, as she cannot demonstrate that Defendants' positions with respect to the information and materials at issue were substantially unjustified. *See* Fed. R. Civ. P. 35(a)(5)(1)(ii). First, Plaintiff's Motion fails to identify the standard which courts must consider in awarding fees when granting a motion to compel. *See generally*, Motion. As such, Plaintiff makes no argument as to why the conduct at issue justifies the award of fees and costs she seeks. *Id.*

Second, Defendants have demonstrated that they engaged in numerous good faith communications with Plaintiff in an effort to compromise, particularly with respect to the form of production for email search results.[10] *See* Ex. D. Defendants asked for Plaintiff to articulate the

---

[10] Plaintiff baselessly asserts that Defendants did not cooperate in her good faith efforts to resolve the issues raised in this Motion. *See* Motion, at 6. In making this argument, she points to no specific instances of purported bad faith, relies on no authority, and provides no examples or other evidence. This is contrary to D.N.M.LR-Civ. 7.3(a) and 7.3(b). This argument is also controverted by several exhibits which show Defendants' attempts to work with Plaintiff's counsel and encourage her to call or email counsel instead of proceeding directly to the Court. *See* Exs. C-

need for metadata or to articulate what was lacking from the production as provided and, further, informed Plaintiff that if she would provide supporting case law or orders suggesting a different form of production was warranted or required, that they would take such authority under advisement. Plaintiff failed to provide any reasons that she needs the metadata in good faith correspondence and has not even provided an explanation within her Motion, let alone reasons which would justify an increased burden on Defendants based on the proportionality aspect of Rule 26. *See generally*, Motion. To date, Plaintiff has failed to provide any authority supporting that she is entitled to the materials she seeks in the manner she requested. Comparatively, in its response, and in good faith communications, Defendants have explained why it has produced the emails in the manner that is has, how it has modified the production to make it usable to Plaintiff's counsel, and reasons why Plaintiff's requested form is unreasonable in this case. Accordingly, because Plaintiff has not shown any entitlement to fees based on the standard set forth in Rule 37, the Court should decline to award Plaintiff any such fees.

B.  Plaintiff's Claims that Defendants "Abused[] a Confidentiality Order" are Meritless.

Plaintiff has argued that (1) Defendants misrepresented the scope of Request for Production No. 6 at the second informal discovery conference on December 18, 2024 and (2) that Defendants' improperly sought a confidentiality order on FERPA grounds because the refined email production did not contain any FERPA protected emails. *See* Motion, at 7. Both allegations, neither of which Plaintiff supports with evidence in the manner contemplated by D.N.M.LR-Civ. 7.3(b), are discordant with the factual record in this case. Further, Plaintiff does not present any authority in conjunction with these arguments, let alone any authority which suggests that Plaintiff is entitled to some type of relief on either of these bases.

First, at the second informal discovery conference, Defendants explained to the Court and to Plaintiff's counsel that a confidentiality order was needed because materials identified in

---

F. Plaintiff's counsel's lack of commitment to engaging in good faith communications is also discernible from the fact that Plaintiff's counsel, without attempting to contact defense counsel, requested the second informal discovery conference a mere 39 minutes after Defendants' Second Supplemental Responses to Plaintiff's first set of discovery were served. *See* **Exhibit H**.

Defendants' email search (generated from the initial search terms agreed to by the parties on November 13) contained several results which constituted FERPA-protected student educational records. Defendants did not represent to the court that the email search at issue contained all emails to and from Plaintiff, but instead communicated that, consistent with the agreed search terms, APS had run a search within Plaintiff's email account for any emails containing one or more of the following terms: "accommodation," "accommodations," "FMLA," "telework," or "remote work." *See* Ex. D, at 8-9 (containing initial search terms).

Second, Defendants did not act improperly in seeking the confidentiality order, because the results generated by its initial search included protected information. As demonstrated above, *see* Section (1) *supra*, because of Plaintiff's position with APS, the term "accommodation" and its plural resulted in many false positives, as Plaintiff frequently emails concerning student IEPs and each student IEP contains the word "accommodation." Additionally, Defendants did warn Plaintiff before conducting the search that inclusion of this term without further parameters was likely to result in many search results which are non-responsive.[11] Accordingly, the Court properly entered the confidentiality order to allow Defendants to disclose FERPA protected email correspondence. The sufficiency as to the scope of the email search was ultimately addressed at the third informal discovery conference, after which the parties agreed to limit the terms. The revised terms for Plaintiff's inbox paired "accommodation" with terms like "SCDS" (the acronym for Plaintiff's medical condition), "balance", "vertigo" and "hearing" and also included specific accommodations like "captioning" or "closed captioning." *See* Ex. D. at 9. With these revisions, the number of false positives dramatically decreased. Further, none of the searches with refined

---

[11] Plaintiff baselessly claims that Defendants took steps to produce these emails, including by proposing a confidentiality order, to obstruct discovery and cause delay. Again, Plaintiff makes this claim without citing any evidence. Further though, this argument begs the question – did Plaintiff expect Defendants to run the email searches with the broad terms agreed to and then further distill which emails might have relevant to Plaintiff's claims from those which did not? If so, Plaintiff has failed to provide any authority supporting an obligation for Defendants to do so. Here, the parties agreed on search terms to locate materials responsive to Request for Production No. 4 and, despite defense counsel's warnings that the terms agreed were overbroad, Plaintiff wanted to run a search for "accommodation" and its plural. Defendants agreed to do so and also incurred costs associated with review. Plaintiff cannot justifiably claim that Defendants worked to cause obstruction, when they agreed to produce the results of the search terms the parties had agreed to and ultimately produced such materials.

terms identified student IEP records which would require the confidential designation. Accordingly, Plaintiff's complaint that Defendants were able to produce more concise results not subject to FERPA is really a complaint that the informal discovery conferences worked to allow the parties to engage in good faith to narrow the emails responsive to discovery. As such, Plaintiff has not demonstrated any misconduct on the part of Defendants but has, instead, shown that Defendants were willing to engage with Plaintiff to help make discovery results more manageable and indisputably followed through to accomplish that goal.

C. Plaintiff's Claims that Defendants Made Material Misrepresentations Lack Support from the Law and the Factual Record.

Plaintiff argues that defendants have made material misrepresentations and intentionally obstructed discovery in five key ways: (1) inflating the initial email production beyond the initial search terms agreed to by the parties; (2) representing to the Court that production of PDFs was reasonable in this case; (3) adding new documents to the refined production which was supposed to pull results from the initial email production based on refined search terms; (4) failing to produce email communications between Socorro Rodriguez (APS ADA Coordinator) and Laura Castille (an attorney who advises APS's ADA department, including with respect to Plaintiff's requested accommodations); and (5) modifying the file names. *See* Motion, at 10-15.[12] Defendants take each of these assertions in turn to demonstrate that Plaintiff has failed to show that defense counsel made any material misrepresentations or otherwise attempted to obstruct the discovery process.

1. *Defendants did not inflate its initial email production by producing emails which did not contain responsive search terms.*

Defendants have already demonstrated that the manner in which it worked with Plaintiff's counsel to identify responsive search terms for its initial January 20 email production was reasonable. *See* Section (1) *supra.* Defendants have similarly shown that it agreed to run refined search terms among the results initially pulled to provide a more narrowly-tailored production,

---

[12] To the extent Plaintiff is also arguing that production of duplicates constitutes a misrepresentation, this claim is baseless as Plaintiff has failed to acknowledge or refute Defendants' good faith explanation as to why the duplicates exist and are responsive. *See* Section (I) *supra.*

which it did on February 7. Nevertheless, Plaintiff attempts to use screenshots of search results purportedly run on the initial email production and the refined production to attempt to create factual inconsistencies.[13] The first example is Plaintiff's claim that the word "accommodation" only shows up 87 times in the initial email production. *See* Motion, at 11. This argument is disingenuous at best. First, Plaintiff's counsel ignores that the email search was designed to pull not only emails with the word "accommodation" in its body text, but also within any attachments. Accordingly, an email might not have the word accommodation, but if its attachment does, both files would be pulled as responsive – accordingly, the number of "hits" within Plaintiffs' Exhibit 7 search does not necessarily correspond to the number of documents that would have been properly included within the initial production. Designing the search in this way was intended to capture all responsive items shared among email, given that Plaintiff's Requests for Production Nos. 4 and 10 sought not only responsive email communications, but all documents as well. *See* Ex. B. Second, this argument and Plaintiff's claim that there was only a 0.002% hit rate is further disingenuous because it fails to consider that the word accommodations was also a search term that defense counsel represented may have resulted in false positives, and fails to add in the additional results attributed to that search term. Third, while defense counsel cannot speak to the program used by Plaintiff or its legitimacy, defense counsel ran its own searches for the words "accommodation" and "accommodations" and determined that these two terms were present within the initial search results over 1082 times. *See* **Exhibit I**.[14] This number is significantly higher than the number Plaintiff's counsel is presenting to the Court, and is also not commensurate

---

[13] Notably, Plaintiff claimed to Defendants and this Court that she could not search or process PDFs which were not in searchable format. *See e.g.* Ex. F, at 4. Exhibits 7 to 13 directly contradict this claim, demonstrating that Plaintiff's counsel made a misrepresentation regarding discovery to attempt to baselessly bolster her argument for native format production. To the extent Plaintiff ran these searches, taking "about dozens of hours" to inflate the costs associated with this drafting this Motion, the Court should not grant those fees to Plaintiff's counsel under Rule 37(a)(5)(A) as Plaintiff already had the refined, admittedly more responsive production in her possession long before the instant Motion was filed, making these fees unreasonable and incurred in bad faith.

[14] Within Exhibits I, J, K, and L, the search terms for each search appear in yellow boxes. Any box which contains the search term and the tag "responsive" pertains to the February 7 production, as we created a narrower file from the main file (housing all the files from the initial production) simply entitled "responsive" to house all documents which contained one of the refined search terms. Search terms without this tag were run in the initial production results.

19

with the number of actual hits generated by these terms as emails with attachments containing responsive terms were properly captured among the search results.

Accordingly, Plaintiff has not shown that defense counsel made any misrepresentations to the court when it advised the Court that a number of the results from the initial search had been triggered by the broad terms initially applied, including the word "accommodation." Plaintiff has also not shown that defense counsel incorporated results in its initial email production which did not contain a responsive search term. Indeed, Plaintiff's Motion is devoid of any examples which contain an email produced which lacks a responsive term or an attachment with a responsive term.

> 2.  *Defendants made no misrepresentations to the Court when communicating its position that producing emails as searchable PDFs is reasonable and warranted.*

As demonstrated above, Defendants have provided reasons why producing the native .pst or .msg files is problematic and has created and employed a system which provided the materials to Plaintiff in a way that was usable according to Plaintiff's counsel's definition of the term. *See* Ex. D (memorializing Plaintiff counsel's representations that to be usable, the email production needed to allow her to sort productions by date or chain, access metadata, and easily search the documents). *See* Sections (1), I(B) *supra*. Additionally, while Plaintiff claims that defense counsel relied on the number of pages to suggest that pdfs were a more reasonable format in which to produce the records, defense counsel made no such representation. Defense counsel has consistently maintained that producing native .pst or .msg files is not reasonable because of the logistical and security, particularly given Plaintiff's repeated failure to articulate what relevance the metadata has in this case specifically. *See generally*, Motion; Background *supra.*

> 3.  *Plaintiff's claim that the Defendants added additional documents in its refined production instead of running the narrowed search terms within the existing pool of documents is baseless.*

Plaintiff has three purported bases for claiming that Defendants added additional documents to its February 7 production which were not produced within the initial January 20 production: (1) the number of times the terms "accommodation" and "Socorro" appear in the

February 7 production as compared to the initial production; (2) the quality of the production is better because the documents in the February 7 production were not "printed" first; and (3) an email purportedly not in the first production, but which was in the second production stating "I have a history of elevator access…." Motion, at 12. None of these arguments demonstrates that Defendants strayed from their plan to run new searches containing additional results. *See* Ex. D, at 8-9. Additionally, Plaintiff's argument is belied by the metadata.

First, Plaintiff claims that in the February 7 production, the word "accommodation" appears 321 times, where it only purportedly appears 79 times in the initial production. Motion, at 11-12. In running its own searches, Defendants have determined that the word "accommodation" occurred in 254 results in the initial production and in only 144 results in the February 7 production. *See* Ex. I; **Exhibit J**. Plaintiff also claims that in the February 7 production, the name "Socorro" appears 545 times, where it only purportedly appears 3 times in the initial production. Motion, at 12-13. Defendants have determined that the name "Socorro" appeared in 309 results in the initial production and appears in 237 results within the February 7 production. *See* **Exhibit K**.

Second, Plaintiff baselessly claims that the initial production was printed first without any proof. *See* Motion, at 11. The email searches were run online and were loaded into ediscovery software from which both batches were produced. However, the February 7 batch was made searchable through OCR. Any difference in quality is likely attributable to the fact that the initial production was not searchable but the February 7 production was. Additionally, even if this claim was true, it does not demonstrate that Defendants added any additional documents.

Third, Plaintiff claims that an email from August 1, 2023 was not present within the initial production but is present 42 times in the February 7 production. *See* Motion, at 12. In conducting its own search, Defendants determined that the phrase "I have a history of elevator access" was present within 40 emails within both the initial and February 7 production. *See* **Exhibit L**. Accordingly, Plaintiff's claims that this email was not present in the initial production are baseless.

Finally, the metadata spreadsheet shows a last saved/creation date for the email files of November 15, 2024, which falls two days after the initial search terms were decided by the parties.

This date represents the date that the email files were batched and loaded into our e-discovery platform. The metadata shows that the emails were pulled in November 2024, not January or February 2025. *See* Ex. G. Accordingly, the metadata demonstrates that Plaintiff's claims that additional documents were added into the February 7 production are baseless.

4. *Defendants have not failed to produce emails between Socorro Rodriguez and Laura Castille.*

Plaintiff claims that Defendants' production fails to include emails between Laura Castille and Socorro Rodriguez. Plaintiff does not clarify how this constitutes a material misrepresentation and has not identified any attempts to confer with defense counsel with respect to these issues. This constitutes a failure to comport with Rule 37's good faith requirement and, to the extent the Court finds that Plaintiff is entitled to any fees incurred in drafting this Motion, Plaintiff's counsel is not entitled to any such fees related to this issue. *See* Rule 37(a)(5)(A)(i).

Beyond this, Plaintiff's argument that Defendant failed to produce these records is severely lacking Plaintiff has not identified which request these materials would be responsive to. Plaintiff has also failed to acknowledge the email communications with Ms. Castille, Ms. Rodriguez, and Plaintiff or Plaintiff's counsel which have been produced as part of Plaintiff's ADA file.

Plaintiff has also failed to demonstrate any entitlement to these emails. First, to the extent Plaintiff's counsel is aggrieved that communications with her or her client involving Ms. Rodriguez and Ms. Castille have not been produced, *see* Motion, at 14, any alleged damage resulting from this purported failure is meritless as Plaintiff's counsel has custody and control of these materials. Second, Ms. Rodriguez's communications with Ms. Castille concerning Plaintiff's accommodations are privileged attorney client communications, as Ms. Castille advised the ADA office during the ADA process with respect to Plaintiff's requests for accommodations. Indeed, the very emails sought by Plaintiff's counsel occurred following the March 2024 interactive process meeting where Plaintiff's counsel and Ms. Castille were present in their capacity as counsel. Pursuant to Rule 26(b), these emails are privileged and beyond the scope of discovery. The attorney-client privilege protects "'confidential communications by a client to an attorney

22

made in order to obtain legal assistance' from the attorney in his capacity as a legal advisor." *In re Grand Jury Subpoena Duces Tecum Issued on June 9*, 1982, 697 F.2d 277, 278 (10th Cir.1983) (quoting *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)). Plaintiff has presented no authority supporting a conclusion that the emails in question are not subject to privilege. Additionally, to the extent Plaintiff's counsel wishes to address potential nuances which might make some of these communications discoverable, she should attempt to confer with defense counsel in good faith and should have done so before filing the instant Motion.

### 5. *Defendant has not modified the file names.*

Plaintiff has claimed that Defendants modified the file names of the produced attachments such that she cannot tell what attachments belong to what emails. Defendants have been clear that it did not modify any file names – they simply loaded the native files into the ediscovery platform, ran the search terms identified, and marked the documents as responsive which had the refined search terms. The metadata was preserved and left unaltered and was produced in a spreadsheet by iPro, defense counsel's ediscovery platform. *See* Email Exchange dated February 24, 27, 2024, attached as **Exhibit M**. Plaintiff cannot show that Defendants acted to change any file names.

Taken together, Defendants have shown that they have been diligent in complying with their discovery obligations and, as such, that sanctions under Rule 37(a)(5)(A) would be improper against them. This Court should exercise its discretion to deny Plaintiffs' the costs and fees she requests, even in the event it grants her Motion in full or in part.

### III. Pursuant to Rule 37, the Court Should Consider Granting Defendants' Reasonable Fees and Costs Associated with Responding to the Motion.

"The rules should deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists." *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 680 (10th Cir. 2012) (quoting 1970 committee notes to Rule 37(a)(4)). "The great operative principle of Rule 37(a)(5) is that the loser pays," *In re Lamey*, 2015 WL 6666244 at \*4 (D.N.M. 2015) (quoting Wright, Miller & Marcus, Federal Practice and Procedure (3d ed. 2010), § 2288, n.17), unless failure to respond was substantially justified or an award of expenses would otherwise

be unjust. *Id.* at *5. The Supreme Court has described substantially justified" under Rule 37 as "a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988) (citations, brackets, and internal quotation marks omitted). "Substantially justified" connotes "not justified to a high degree, but rather justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Id.* (internal quotation marks omitted). Substantial justification requires a "legitimate position[ ]." *N.M. ex rel. Balderas v. Real Estate L. Ctr.*, 429 F. Supp. 3d 996, 1008 (D.N.M. December 9, 2019) (citation omitted). A legitimate position rests soundly on any "justifi[cation] to a degree that could satisfy a reasonable person." *See, e.g., Lester v. City of Lafayette*, 639 F. App'x 538, 542 (10th Cir. 2016).

Here, as demonstrated above, Plaintiff has violated at least five local discovery rules – 7.1(a), 7.3(a), 7.3(b), 10.5, and 37.1(b). One violation is the requirement that arguments be supported with legal authority. *See* D.N.M.LR-Civ. 7.3(a). Plaintiff's arguments, spanning twelve pages, did not cite to a single case. *See generally*, Motion. This is unreasonable and demonstrates that the Motion was not substantially justified. Additionally, as detailed above, Plaintiff's arguments were supported by incomplete and mischaracterized facts relating to the productions made by Defendant and the good faith communications surrounding and/or motivating Defendants' actions in discovery. *See* Background *supra.* This too, is unreasonable, and demonstrates bad faith by Plaintiff's counsel. Therefore, Defendants respectfully request this Court consider awarding their reasonable attorneys' fees incurred in responding to Plaintiff's Motion.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be denied in its entirety and the Court should consider awarding costs to Defendants under Rule 37(a)(5)(A). To the extent the Court is inclined to grant any portion of the Motion, Plaintiff should not receive any fees pursuant to Rule 37 or, at the least, should have the fees reduced as set forth herein for failure to act in good faith and comply with the applicable rules of procedure.

Respectfully Submitted,

MODRALL, SPERLING, ROEHL,
  HARRIS & SISK, P.A.


By: _/s/ Tessa L. Chrisman_____
Mia K. Lardy (mia.lardy@modrall.com)
Tessa Chrisman (tessa.chrisman@modrall.com)
*Attorneys for Defendants*
P.O. Box 2168
Albuquerque, NM 87103-2168
505.848.1800/ Fax: 505.848.9710


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of March, 2025, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**Heather Burke Law**
Heather Burke
1000 Cordova Place #24
Santa Fe, NM 87505
(505) 428-9424
heather@hburkelaw.com


By: _/s/ Tessa L. Chrisman_____
        Tessa L. Chrisman